**Wanda Jean SPIKER and James Lee Spiker, Appellants,**

v.

**Sherry Lynn SPIKER and Kelly Keith Spiker, Appellees.**

**No. 04–1182.**

Supreme Court of Iowa.

Jan. 20, 2006.

Scot L. Bauermeister of Fitzgibbons Law Firm, Estherville, for appellants.

Michael J. Houchins of Zenor, Houchins & Borth, Spencer, for appellees.

CADY, Justice.

The issue in this case is whether a custodial parent can modify a grandparent visitation order on the ground that the applicable provision of the grandparent visitation statute, upon which the order was based, was subsequently found unconstitutional. The district court determined the visitation order was subject to modification, and it terminated the visitation. We agree and affirm the judgment of the district court.

## I. Background Facts and Proceedings

Jim and Wanda Spiker are the grandparents of Paige and James Spiker. Paige and James are the children of Kelly Spiker, Wanda and James's son, and Sherry Spiker. Sherry and Kelly were divorced on August 16, 1999. Sherry was designated the primary physical caretaker of the children, and Kelly was allowed visitation.

On February 5, 2001, Wanda and Jim filed a petition for grandparent visitation under Iowa Code section 598.35 (2001). They filed the petition after Kelly stopped visiting the children in January 2000, and Sherry stopped allowing the children to visit them. On August 21, in the course of the litigation, Wanda, Jim, and Sherry entered into a stipulation agreement providing that Wanda and Jim would be allowed visitation with the children and that they would provide transportation of the children to and from visits. However, they could not agree as to the length or time of the visitation, so they left that issue for the court to decide. Following a hearing, the court granted Wanda and Jim visitation with the children on the first weekend of every month beginning September 2001. Sherry did not appeal.

Visitation occurred as ordered for almost a year when Sherry began withholding Paige from visits. By 2004, Sherry

refused to allow Wanda and Jim to visit either Paige or James.

On February 19, 2004, Wanda and Jim initiated contempt proceedings against Sherry for refusing to allow visitation with the children. The court entered an order for Sherry to show cause why she should not be held in contempt. Sherry responded that her refusal to allow visitation was "due to good cause for the children's best interest." She also asserted that the grandparent visitation statute was unconstitutional and that enforcement of the visitation order would violate her due process rights.

The court held a hearing on the issue of Sherry's contempt on March 22, 2004. It issued an order on March 25 finding Sherry in contempt of court. The court reasoned that Sherry should have challenged the constitutionality of the visitation order at or before trial, not as a defense in contempt proceedings. *See Walker v. City of Birmingham*, 388 U.S. 307, 317–21, 87 S.Ct. 1824, 1830–32, 18 L.Ed.2d 1210, 1217–20 (1967) (holding the way to challenge an unconstitutional ordinance and injunction issued under it was to apply to have injunction modified or dissolved, not to violate the injunction and assert its unconstitutionality as a defense in contempt proceedings; stating "respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom"). Instead of sentencing Sherry to jail time for contempt, the court awarded Wanda and Jim an additional seven days of visitation with the children in June 2004. *See* Iowa Code § 598.23(2)(*b*) ("The court may, as an alternative to punishment for contempt, make an order which ... [m]odifies visitation to compensate for lost visitation time....").

Sherry filed a motion to enlarge or amend under rule 1.904(2), again arguing that enforcement of the visitation order would violate her due process right to raise her children without undue interference by the State. She contended that the order could not be enforced absent a finding that she was an unfit mother. She further argued that the stipulation agreement she entered into with Wanda and Jim was unenforceable and did not validly waive her constitutional rights. The court denied the motion. Sherry did not appeal.

On April 27, 2004, Sherry filed a petition to modify, vacate, or stay the visitation order, again arguing that the decree was unconstitutional. After Wanda and Jim filed their answer, Sherry moved for summary judgment, and Wanda and Jim resisted. On June 29, 2004, the court granted Sherry's motion for summary judgment and vacated the visitation order. Wanda and Jim appeal.

## II. Standards of Review

"[C]hallenges to Iowa's grandparent visitation statute raise 'questions of substantive due process and liberty interests in the context of statutory interpretation' obliging us 'to review the record de novo, making our own evaluation of the totality of the circumstances.'" *In re Marriage of Howard*, 661 N.W.2d 183, 187 (Iowa 2003) (quoting *Santi v. Santi*, 633 N.W.2d 312, 316 (Iowa 2001)). "Substantive due process '"provides heightened protection against government interference with certain fundamental rights and liberty interests."'" *Sanchez v. State*, 692 N.W.2d 812, 819 (Iowa 2005) (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49, 56 (2000)). We apply strict scrutiny when a fundamental liberty interest is at issue. *Id.* at 819–20 (citing *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1, 16 (1993)). We have held that "the parental caretaking interest," or the

right to direct the upbringing of one's children, is fundamental. *Id.* (citing *Santi*, 633 N.W.2d at 317). Therefore, state action infringing on that interest must be narrowly tailored to serve a compelling state interest. *Id.* (citing *Santi*, 633 N.W.2d at 318). We have already held that the provision of the grandparent visitation statute at issue in this case, section 598.35(1), is not narrowly tailored to serve a compelling state interest and is unconstitutional on its face. *In re Marriage of Howard*, 661 N.W.2d 183, 185, 192 (Iowa 2003). The only question is whether this holding allows Sherry to modify a grandparent visitation order from which she did not appeal.

### III. Discussion

### A. Res Judicata

 Wanda and Jim first argue that Sherry is barred from challenging the constitutionality of the visitation order under the doctrine of res judicata.[1] They claim Sherry should have appealed the August 21, 2001 decree granting visitation if she wanted to challenge it as unconstitutional. This argument is supported by several general principles governing res judicata, and was recently adopted by the Arkansas Supreme Court in *Hunt v. Perry*, 355 Ark. 303, 138 S.W.3d 656 (2003).

In *Hunt v. Perry*, a grandmother sought visitation of her grandchildren from their father, her former son-in-law. *Hunt*, 138 S.W.3d at 657. The father argued the Arkansas Grandparent Visitation Act was unconstitutional, relying on the Supreme Court's *Troxel* decision. *Id.* at 658. The district court found the statute was constitutional and granted the grandmother visitation. *Id.* The father did not appeal this order. *Id.* A short time later, the Arkansas Supreme Court held the grandparent visitation statute was unconstitutional, and the father sought to terminate the grandmother's visitation. *Id.* The district court held the father was barred under res judicata from relitigating the constitutionality of the statute. *Id.* at 659. On appeal, the supreme court agreed:

> [T]he fact that he failed to pursue an appeal now prevents him from challenging the trial court's previous order finding the statute constitutional. In sum, because we have a case that involves the same parties, the same issue, and has already been decided by a court of competent jurisdiction, the doctrine of *res judicata* is applicable.

*Id.* at 662; *see also Ingram v. Knippers*, 72 P.3d 17, 21–22 (Okla.2003) (holding mother could not relitigate constitutionality of grandparent visitation statute in action to terminate visitation order when she could have, but did not, raise the issue in

---

1. Both parties reference the "law of the case" doctrine, but that doctrine is inapplicable. The law of the case doctrine says:

 [A]n appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case. *Springer v. Weeks & Leo Co.*, 475 N.W.2d 630, 632 (Iowa 1991). Like *res judicata*, the law of the case doctrine is founded on a public policy against reopening matters which have been decided. *Wolfe v. Graether*, 389 N.W.2d 643, 651 (Iowa 1986) (citing 46 Am.Jur.2d *Judgments* § 400, at 568 (1969)). Thus, issues decided

by an appellate court generally cannot be reheard, reconsidered, or relitigated in the trial court. 5 C.J.S. *Appeal and Error* § 975, at 476–77 (1993). The appellate court decision is final as to all questions decided and the trial court is obligated to follow that decision. *Id.*

*United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 103 (Iowa 2000); *accord In re Lone Tree Cmty. Sch. Dist.*, 159 N.W.2d 522, 526 (Iowa 1968). However, this is the first time the Spikers' case has been before any appellate court, so it is clear the applicable doctrine is res judicata, not law of the case.

an appeal of the initial order). *But see In re T.J.K.*, 62 S.W.3d 830, 832 (Tex.Ct.App. 2001) ("If *Troxel* truly does make [the grandparent visitation statute] unconstitutional, then maintaining an order granting grandparent access would be inappropriate because it would violate [the parent's] Fourteenth Amendment rights under the United States Constitution. The order granting grandparent visitation is subject to modification by the trial court.").

In deciding whether to follow this holding, we must determine whether the *Hunt* decision is consistent with our prior law concerning res judicata. *See Handeland v. Brown*, 216 N.W.2d 574, 577 (Iowa 1974) ("[W]e have no obligation to adopt a rule just because it has generally been adopted elsewhere. Although cases from other states may be persuasive authority, they have no greater cogency than the reasoning by which they were decided."). We therefore turn to consider that body of law.

■■■ "The doctrine of res judicata embraces the concepts of claim preclusion and issue preclusion." *Colvin v. Story County Bd. of Review*, 653 N.W.2d 345, 348 (Iowa 2002) (citing *Bennett v. MC No. 619, Inc.*, 586 N.W.2d 512, 516 (Iowa 1998)); *accord* 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4402, at 7 (2d ed.2002) [hereinafter Wright]. Wanda and Jim must necessarily rely on claim preclusion in this case, rather than issue preclusion, because issue preclusion requires the issue to have been actually litigated, and the constitutionality of the grandparent visitation statute was not actually litigated before the initial visitation order was entered. *See Restatement (Second) Judgments* § 27, at 250 (1982) ("When an issue of fact or law is *actually litigated* and determined by a valid and final judgment, and the determina-

tion is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (Emphasis added.)).

■■■ Our law concerning claim preclusion is well established:

The general rule of claim preclusion provides a valid and final judgment on a claim precludes a second action on that claim or any part of it. The rule applies not only as to every matter which was offered and received to sustain or defeat the claim or demand, *but also as to any other admissible matter which could have been offered for that purpose. Claim preclusion, as opposed to issue preclusion, may foreclose litigation of matters that have never been litigated.* It does not, however, apply unless the party against whom preclusion is asserted had a "full and fair opportunity" to litigate the claim or issue in the first action. A second claim is likely to be barred by claim preclusion where the "acts complained of, and the recovery demanded are the same or where the same evidence will support both actions." A plaintiff is not entitled to a second day in court by alleging a new ground of recovery for the same wrong.

*Arnevik v. Univ. of Minn. Bd. of Regents*, 642 N.W.2d 315, 319 (Iowa 2002) (citations omitted; emphasis added). Thus, the party seeking to invoke the doctrine of claim preclusion must establish three elements: (1) "the parties in the first and second action were the same;" (2) "the claim in the second suit could have been fully and fairly adjudicated in the prior case;" and (3) "there was a final judgment on the merits in the first action." *Id.; accord* 18 Wright § 4405, at 83.

The first element of claim preclusion is beyond dispute. Clearly, the parties in the first action (Wanda and Jim's petition for grandparent visitation) and in the second

action (Sherry's petition to modify, vacate, or stay the visitation order) are the same.

The second element is also fairly straightforward. Again, the issue is whether Sherry could have attacked the constitutionality of the grandparent visitation statute in the first action. *See Arnevik,* 642 N.W.2d at 319 (listing second element as "the claim in the second suit could have been fully and fairly adjudicated in the prior case"). The general rule is that "[w]hen a valid and final personal judgment is rendered in favor of the plaintiff, ... the defendant cannot avail himself of the defenses he might have interposed, or did interpose, in the first action," in a subsequent action. *Restatement (Second) of Judgments* § 18, at 151–52; *see In re Estate of Boyd,* 634 N.W.2d 630, 637–38 (Iowa 2001) (when party did not raise defense to claim, final judgment was issued, and party did not appeal, party could not collaterally attack the judgment); *Robbins v. Daniel,* 226 Iowa 678, 690, 284 N.W. 793, 798 (1939) (when party did not assert affirmative defense, res judicata barred raising the issue in later suit); *see also Shin v. Portals Confederation Corp.,* 728 A.2d 615, 619 (D.C.1999) (where party could have raised fraudulent misrepresentation as defense in first action, he could not bring a later action for fraudulent misrepresentation because of res judicata); *J.C. v. Adoption of Minor Child Named Herein,* 797 So.2d 209, 212 (Miss.2001) (" '[T]he doctrine of res judicata bars litigation in a second lawsuit on the same cause of action "of all grounds for, *or defenses to,* recovery that were available to the parties [in the first action], regardless of whether they were asserted or determined in the prior proceeding." ' " (quoting *Key v. Wise,* 629 F.2d 1049, 1063 (5th Cir.1980)) (emphasis added)); *Ingersoll–Rand Co. v. Valero Energy Corp.,* 997 S.W.2d 203, 207 (Tex.1999) (res judicata bars "claims *or defenses* that, through diligence, should have been litigat-

ed in the prior suit but were not" (emphasis added)). Sherry points to no reason, and we can conceive of none, why she could not have challenged the constitutionality of our grandparent visitation statute when Wanda and Jim initially sought visitation under it. The constitutionality of the statute could have been fairly and fully litigated in that action. *Arnevik,* 642 N.W.2d at 319.

The final element of claim preclusion is that "there was a final judgment on the merits in the first action." *Id.; see also Restatement (Second) of Judgments* § 13, at 132 ("The rules of res judicata are applicable only when a final judgment is rendered."). Whether the initial visitation order was a "final" judgment is the fighting issue in this case. Sherry contends that res judicata does not apply to orders concerning custody and visitation and that the court always has jurisdiction to modify such a decree.

■■■ There is no specific statutory authority for courts to modify grandparent visitation decrees. *See* Iowa Code § 598.35; *id.* § 598.41; *see also id.* § 600B.31 (stating courts in paternity actions have continuing jurisdiction in paternity actions "to determine the custody in accordance with the best interests of the child"). Nevertheless, the initial grandparent visitation order in this case was a judgment granting continuing relief. *See Restatement (Second) of Judgments* § 13 cmt. c, at 133 ("A judgment concluding an action is not deprived of finality for purposes of res judicata by reason of the fact that it grants or denies continuing relief, that is, requires the defendant, or holds that the defendant may not be required, to perform acts over a period of time. Judgments of these types are rendered typically in actions for ... child support and

custody."). When judgments concerning continuing relief are involved and

> a change of circumstances makes the judgment too burdensome or otherwise inapposite as a regulation of ongoing conduct, it is ordinarily possible for the party concerned to apply to the rendering court for a modification of the terms of the judgment.

*Restatement (Second) of Judgments* § 13 cmt. *c*, at 133; *see also id.* § 73, at 197 ("Subject to the limitations stated in § 74, a judgment may be set aside or modified if: (1) The judgment was subject to modification by its own terms or by applicable law, and events have occurred subsequent to the judgment that warrant modification of the contemplated kind; or (2) There has been such a substantial change in the circumstances that giving continued effect to the judgment is unjust."); *cf. In re Marriage of McCurnin*, 681 N.W.2d 322, 329 (Iowa 2004) (stating divorce decree setting child support obligation, which parties did not appeal, was res judicata "until a modification changed its provisions" (citing *In re Bisenius*, 573 N.W.2d 258, 260 (Iowa 1998))); Iowa Code § 598.21(8) (requiring a "substantial change in circumstances" to modify orders under section 598.21).[2] *But see Restatement (Second) of Judgments* § 74, at 202 ("Except with regard to judgments referred to in §§ 65–66 [invalid default judgments] and 69 [lack of subject matter jurisdiction], relief from a judgment will be denied if: (1) The person seeking relief failed to exercise reasonable diligence in discovering the ground for relief, or after such discovery was unreasonably dilatory in seeking relief; or (2) The application for relief is barred by lapse of time; or (3) Granting the relief will inequitably disturb an interest of reliance on the judgment. When such an interest can be adequately protected by giving the applicant limited or conditional relief, the relief will be shaped accordingly."). This is consistent with our general view that courts have inherent authority to modify decrees concerning custody and visitation of children based on a substantial change in circumstances. *See Hobson v. Hobson*, 248 N.W.2d 137, 139–40 (Iowa 1976).

 In order to determine whether an order granting continuing relief has preclusive effect in a later action (i.e., is a "final judgment" for res judicata purposes), we ask "whether the issues in the two actions are materially different because of events which occurred in the interim, in which case preclusion is to be denied." *Restatement (Second) of Judgments* § 13 cmt. *c*, at 134. In other words, the first judgment does not have a preclusive effect in the second action if circumstances have changed sufficiently to warrant modifying the decree. *Wade v. Hirschman*, 903 So.2d 928, 933 (Fla.2005) ("To modify such judgments, the trial court must decide whether there is a 'factual basis sufficient to show that conditions have become materially altered since the entry of the previous decree.' The degree of change in the conditions and circumstances since the date of the previous decree must be of a substantial character." (Citations omitted.)); *In re Marriage of McCurnin*, 681 N.W.2d at 329 ("Jennifer

---

**2.** In addition, Iowa Rule of Civil Procedure 1.1012 provides for modification of judgments under certain circumstances listed in the rule. *See* Iowa R. Civ. P. 1.1012 (grounds for modifying or vacating). However, petitions for relief under that rule must be filed within one year of the entry of the judgment or order involved. *Id.* r. 1.1013(1). Here, Sherry did not file her petition to modify until April 27, 2004—two years and eight months after the visitation order was filed on August 21, 2001. Therefore, even assuming one of the grounds listed in rule 1.1012 applied to Sherry, she could not modify the judgment under that rule.

did not appeal following the entry of the decree. The decree was therefore res judicata as to what was to be considered in calculating David's child support obligation until a modification changed its provisions." (Citation omitted.)). This relaxation of the res judicata standard in child custody cases is required because our goal in such cases is always to serve the best interests of the child, which may require court supervision and modification throughout the child's minority. *See In re Marriage of Ford,* 563 N.W.2d 629, 631 (Iowa 1997) (primary consideration in child custody cases is the best interests of the children (citing *In re Marriage of Kleist,* 538 N.W.2d 273, 276 (Iowa 1995); *In re Guardianship of Knell,* 537 N.W.2d 778, 780 (Iowa 1995))); *accord Linder v. Linder,* 348 Ark. 322, 72 S.W.3d 841, 850 (2002) ("[C]ustody orders are subject to modification in order to respond to changed circumstances and the best interest of the child."). This standard mirrors the general standard for modification of custody provisions of a dissolution decree. *See Hobson,* 248 N.W.2d at 139–40.

Ultimately then, the case turns on whether Sherry established a substantial change in circumstances warranting modification of the initial grandparent visitation order. In her petition to modify, the only change in circumstances Sherry alleged was that we had held some provisions of the grandparent visitation statute unconstitutional in recent years. *See Lamberts v. Lillig,* 670 N.W.2d 129, 132 (Iowa 2003) (section 598.35(3)); *In re Marriage of Howard,* 661 N.W.2d at 185 (section 598.35(1)); *Santi,* 633 N.W.2d at 314 (section 598.35(7)). We must determine whether this is a sufficient change in circumstances.

We have held that "[t]he res judicata consequences of a final unappealed judgment are not altered by the fact that the judgment may have rested on incorrect legal principles." *In re Bisenius,* 573 N.W.2d at 260 (citing *Gail v. W. Convenience Stores,* 434 N.W.2d 862, 863 (Iowa 1989); *Mahaffa v. Mahaffa,* 230 Iowa 679, 683–84, 298 N.W. 916, 919 (1941)). However, we have also held that a change in the law occurring after the original judgment constituted a substantial change in circumstances justifying modification. *See In re Marriage of Feustel,* 467 N.W.2d 261, 265 (Iowa 1991) (holding change in federal tax law under which father was no longer allowed to claim children as dependents constituted substantial change in circumstances). The *Restatement* also contains conflicting statements on the issue. On one hand, it says it would be "a very unsound policy" to deny preclusion when "a subsequent judicial decision changes the law that was applied in reaching an earlier judgment." *Restatement (Second) of Judgments* § 73 cmt. *c,* illus. 4, at 200. "On the other hand," says the *Restatement,* "when a change of law occurs following a judgment regulating future conduct, that may be a circumstance justifying relief from the judgment." *Id.* Moreover, the general *Restatement* rule states that a change in the law would not prevent the application of res judicata. *See Restatement (Second) of Judgments* § 18 cmt. *b,* at 153 ("The fact that the judgment was based on error does not preclude the defendant from setting the judgment up as a defense to an action on the original claim. If it was erroneous, the plaintiff might have taken steps to have it set aside or reversed in the original proceeding."). However, there is an exception to the general rule. *Restatement (Second) of Judgments* § 26(1), at 233–34. Claim preclusion does not apply when "[t]he judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the

plaintiff should be allowed to split her claims." *Id.* § 26(1)(d), at 234 & cmt. *e,* illus. 6, at 240. That is,

> the general principal that changes of law do not defeat claim preclusion may be relaxed when the dispute involves matters of special sensitivity. The easiest illustrations are provided by development of constitutional principles in cases that challenge continuing conduct of broad public importance.... A few cases reject preclusion in face of evolving constitutional law principles although the public interest may not seem as vital or the interests involved seem more nearly personal than public. These decisions are justified by many factors. The rights involved may be of public importance at an abstract level, despite the lack of obvious immediate importance. Often the first actions were eligible for preclusion only on principles of representation; special care is always required to ensure that nonparties are properly bound in such cases. Finally, ordinary claim preclusion rules are often strained by continuing conduct.

18 Wright § 4415, at 372–73.

The United States Supreme Court has dealt with the issue in the context of a statutory change occurring after the original judgment. In *System Federation No. 91 v. Wright,* 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961), a group of nonunion employees entered into a consent decree with a railroad and a number of unions representing its employees enjoining the railroad and its unions from discriminating against nonunion employees (i.e., requiring a "union shop"). *Sys. Fed'n No. 91,* 364 U.S. at 644, 81 S.Ct. at 369, 5 L.Ed.2d at 351. Afterwards, Congress amended the Railway Labor Act "to permit, under certain circumstances, a contract requiring a union shop." *Id.* at 644, 81 S.Ct. at 369–

70, 5 L.Ed.2d at 352. The railroad and the unions then sought to modify the decree's injunction to reflect this change in the law. *Id.* at 644, 81 S.Ct. at 370, 5 L.Ed.2d at 352. In commenting on the res judicata effect of the original decree, the Court said:

> There is also no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, *whether of law or fact,* obtaining at the time of its issuance have changed, or new ones have since arisen. The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief. Firmness and stability must no doubt be attributed to continuing injunctive relief based on adjudicated facts and law, and neither the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided. Nevertheless *the court cannot be required to disregard significant changes in law or facts if it is "satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong."* A balance must thus be struck between the policies of res judicata and the right of the court to apply modified measures to changed circumstances.

*Id.* at 647–48, 81 S.Ct. at 371, 5 L.Ed.2d at 353 (citation omitted; emphasis added); *see also United States v. Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999, 1005–06 (1932) ("The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tenta-

tive." (Citation omitted.)). The Court ultimately concluded that the decree could be modified due to the change in the law. *Sys. Fed'n No. 91*, 364 U.S. at 652, 81 S.Ct. at 373, 5 L.Ed.2d at 355. The Court explained that "[t]he parties have no power to require of the court continuing enforcement of rights the statute no longer gives." *Id.*

This principle applies with equal, if not greater, force to the visitation order at issue in this case. If the visitation order has turned into "an instrument of wrong," *Sys. Fed'n No. 91*, 364 U.S. at 647, 81 S.Ct. at 371, 5 L.Ed.2d at 353, a court should have the power to modify it, particularly because its enforcement is violating Sherry's fundamental *constitutional* right to direct the upbringing of her children, rather than a mere statutory right. Likewise, Wanda and Jim "have no power to require of the court continuing enforcement of rights the [grandparent visitation] statute no longer gives." *Id.* at 652, 81 S.Ct. at 373, 5 L.Ed.2d at 355.

In sum, the fact that the statute upon which the visitation order was based has been declared unconstitutional is a substantial change in circumstances. Yet, in the context of child custody cases, we have also required the change to "relate to the welfare of the children." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983) (citing *In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980)). The district court did not discuss whether Paige and James' best interests were better served by discontinuing the visitation with their grandparents. However, there is a presumption that parents act in the best interests of their children. *See In re Marriage of Howard*, 661 N.W.2d at 188 (citing *Troxel*, 530 U.S. at 69–70, 120 S.Ct. at 2062, 147 L.Ed.2d at 58–59). Thus, the change in circumstances in this case (the newly recognized unconstitutionality of

section 598.35(1)) "relate[s] to the welfare of the children," *In re Marriage of Frederici*, 338 N.W.2d at 158, because it recognizes Sherry's fitness as a parent to make decisions in the best interests of her children, absent a showing that she is unfit or would harm the children, and it returns this decisionmaking role to her rather than the State.

Although res judicata is founded on important policy considerations, those considerations must give way at least when, as in this case, claim preclusion would result in the State's continuing violation of an individual's fundamental constitutional rights. As previously noted, the Arkansas Supreme Court rejected this conclusion in *Hunt v. Perry*, holding that "a change in circumstances that prevents the application of *res judicata* is a change in the circumstances of the parties, not the law." *Hunt*, 138 S.W.3d at 662. However, we have already held that a change in the law *can* constitute a change in circumstances for purposes of modification. *See In re Marriage of Feustel*, 467 N.W.2d at 265 (holding change in federal tax law under which father was no longer allowed to claim children as dependents constituted substantial change in circumstances). As the Texas Court of Appeals stated in *In re T.J.K.*,

> If a statute that authorized a term or condition of visitation is declared unconstitutional, that change should operate like any other change in circumstances that potentially makes the order unworkable or inappropriate. There is nothing in the statute that limits the change in circumstances to factual changes rather than changes in law.

*In re T.J.K.*, 62 S.W.3d at 832; *cf.* Iowa Code § 598.21(8)(*k*) (listing as a factor to be considered in determining whether there is a substantial change in circumstances "[o]ther factors the court deter-

mines to be relevant in an individual case"). We find the Texas court's reasoning to be more consistent with our law concerning res judicata than the court's reasoning in *Hunt.* Therefore, we conclude the district court was correct that res judicata did not bar Sherry's petition to modify. The court also correctly concluded that the unconstitutionality of section 598.35(1), as pronounced in *In re Marriage of Howard,* was a substantial change in circumstances that justified terminating the grandparent visitation order.

**B. Other Arguments**

Wanda and Jim next argue that even if section 598.35(1), upon which the visitation order is based, would normally be unconstitutional, it is constitutional as applied in this case because Sherry stipulated to the visitation. Wanda and Jim argue Sherry's stipulation to visitation was "tantamount to a consent decree." *In re Marriage of Ask,* 551 N.W.2d at 645 (citation omitted).

■■■ This argument does not alter our res judicata analysis. The judgment in *System Federation No. 91* was also a consent decree. *Sys. Fed'n No. 91,* 364 U.S. at 644, 81 S.Ct. at 369, 5 L.Ed.2d at 351. The Court explained:

"The result is all one whether the decree has been entered after litigation or by consent. In either event, a court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong. We reject the argument for the interven[o]rs that a decree entered upon consent is to be treated as a contract and not as a judicial act.... But in truth what was then adjudged was not a contract as to [anyone]. The consent is to be read as directed toward events as they then were. It was not an abandonment of

the right to exact revision in the future, if revision should become necessary in adaptation to events to be."

*Id.* at 650–51, 81 S.Ct. at 373, 5 L.Ed.2d at 355 (quoting *Swift & Co.,* 286 U.S. at 114–15, 52 S.Ct. at 462, 76 L.Ed. at 1006). Thus, the fact that the visitation order was based on a stipulation does not mean the court cannot modify it if circumstances change. We have said:

[U]nder our decisions the binding force of a stipulation as to alimony, child support and custody depends on the approval of the court. It is the decree and not the contract that becomes binding. The stipulation becomes merged in the decree. And the court may disregard the stipulation entirely.

*Brin v. Brin,* 240 Iowa 659, 664, 37 N.W.2d 261, 264 (1949) (citations omitted); *see also Holland v. Holland,* 260 Iowa 248, 250, 149 N.W.2d 124, 125 (1967) ("The fact the parties made an agreement for support of children and the court approved it in the original decree does not affect the power to modify the decree." (Citations omitted.)); 24A Am.Jur.2d *Divorce and Separation* § 999, at 383–84 (1998) ("The fact that the parties made an agreement for the custody and support of children and that the court approved it in the original decree does not affect the power to modify the decree."); *cf. id.* § 817, at 197 ("Where a court has the general power to modify a decree for alimony or support, the exercise of that power normally is not affected by the fact the decree refers to, or is based on, an agreement of the parties.").

■■■ We also observe that this approach is consistent with our general approach in *Lynch v. Uhlenhopp,* 248 Iowa 68, 83, 78 N.W.2d 491, 500 (1956), where we refused to permit contempt powers of courts to be used to enforce a stipulated provision of a dissolution decree that required the custodial parent to raise the

child of the parties "in the Roman Catholic Religion." Instead, we found that such a provision in a dissolution decree interfered with the constitutional restrictions forbidding interference with individual religious beliefs, and we refused to permit the courts to be used to affirmatively enforce the provision. *Lynch,* 248 Iowa at 83, 78 N.W.2d at 500. Accordingly, we reject Wanda and Jim's contractual argument. We also note that we need not consider Sherry's argument that she did not " 'voluntar[il]y, knowingly and intelligently,' " *Lamberts,* 670 N.W.2d at 135 (citation omitted), waive her parental caretaking interest in the visitation stipulation with Wanda and Jim. Even if she had validly waived her interest, the district court was still empowered to modify the decree upon a substantial change in circumstances.

Moreover, we also reject Wanda and Jim's constitutional-as-applied argument because we have already held section 598.35(1) is unconstitutional on its face. *In re Marriage of Howard,* 661 N.W.2d at 192. If a statute is unconstitutional on its face, by definition, it cannot be constitutional as applied because a finding that a statute is unconstitutional on its face means that it cannot be constitutionally applied under any conceivable set of circumstances. *In re Lewis,* 257 N.W.2d 505, 510 (Iowa 1977) (" 'A statute is not unconstitutional on its face unless it is unconstitutional in every conceivable state of facts; it is ordinarily not unconstitutional as applied unless it is unconstitutional as applied in the specific factual situation before the court.' " (Citation omitted.)); *accord* 3 Chester J. Antieau & William J. Rich, *Modern Constitutional Law* § 50.03, at 711 (1997) (stating a holding that a statute is unconstitutional on its face is a determination that the legislation is always unconstitutional in " 'every conceivable situation which might possibly arise' ").

Finally, Wanda and Jim argue that the district court never had jurisdiction to modify the visitation order because Sherry did not file her petition within the time required by rule 1.1013, our rule governing petitions to vacate or modify final judgments. This argument fails because Sherry's failure to comply with our rule governing modifications of final judgments does not deprive the court of its common-law power to modify judgments granting continuing relief and regulating future conduct upon a substantial change in circumstances. *See Restatement (Second) of Judgments* § 73, at 197 ("[A] judgment may be set aside or modified if: ... [t]here has been such a substantial change in the circumstances that giving continued effect to the judgment is unjust.").

## C. Sherry's Request for Appellate Attorney Fees

The final issue in this appeal is Sherry's request for appellate attorney fees. An award of appellate attorney fees is within the discretion of the appellate court. *In re Marriage of Ask,* 551 N.W.2d at 646 (citing *In re Marriage of Gaer,* 476 N.W.2d 324, 326 (Iowa 1991)). Whether such an award is warranted is determined by considering "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *Id.* (citing *In re Marriage of Gaer,* 476 N.W.2d at 326). Because we do not have any evidence of the parties' respective ability to pay, we remand the case to the district court to determine Sherry's entitlement to fees and the amount, if any, thereof. *See Schaffer v. Frank Moyer Constr., Inc.,* 628 N.W.2d 11, 23 (Iowa 2001) ("[U]nder our current practice, the issue of appellate attorney fees is 'frequently determined in the first instance in

the district court because of the necessity for making a record.'" (quoting *Lehigh Clay Prods., Ltd. v. Iowa Dep't of Transp.,* 545 N.W.2d 526, 530 n. 2 (Iowa 1996))); *see also Markey v. Carney,* 705 N.W.2d 13, 27 (Iowa 2005) (remanding to district court to determine appellate attorney fees); *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.,* 691 N.W.2d 730, 734 (Iowa 2005) (same); *In re Marriage of McCurnin,* 681 N.W.2d at 333 (same).

### IV. Conclusion

Res judicata does not bar Sherry's petition to modify or vacate the visitation order because the change in the law recognizing the unconstitutionality of section 598.35(1) is a substantial change in circumstances justifying modification of the order. "[G]iving continued effect to the [visitation order] is unjust," *Restatement (Second) of Judgments* § 73(2), at 197, because it constitutes a continuing violation of Sherry's constitutional right as a mother to make decisions regarding her children's well-being absent a showing of harm to them or her unfitness. The fact that the order was based on a stipulation of the parties does not alter this result. The district court was therefore correct in vacating the visitation order. We affirm the district court judgment and remand for determination of Sherry's request for appellate attorney fees.

**AFFIRMED AND REMANDED.**