# IN THE COURT OF APPEALS OF IOWA

No. 17-0559
Filed February 7, 2018

**JEFFREY L. SAVARY,**
     Plaintiff-Appellee,

**vs.**

**ELISABETH MURDACH,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Edward A. Jacobson, Judge.

The mother appeals from the physical-care provision of the district court's decree. **AFFIRMED.**

Rosanne Lienhard Plante of Second Opinion Legal Center and Mediation Service, P.L.C., Hinton, for appellant.

Craig H. Lane of Craig H. Lane, P.C., Sioux City, for appellee.

Considered by Vaitheswaran, P.J., Bower, J, and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**BLANE, Senior Judge.**

Elisabeth Murdach appeals the physical-care provision of the district court's decree, which provided joint physical care of the minor child, N.T., to Elisabeth and the child's father, Jeffrey Savary. Elisabeth maintains the court should have given her physical care of the minor child and asks for an award of appellate attorney fees. Jeffrey asks that we affirm the district court's shared-care provision and award him appellate attorney fees.

We review custody decisions de novo. *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa 2002). We base our decision primarily on the circumstances of the parties presently before us. *Id.* As always, we are guided by the best interests of the child at issue. *See In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

*A. Physical Care.* In deciding what arrangement of physical care is in the child's best interests, we apply the same legal analysis for unmarried parents as those who were once married. *See Hensch v. Mysak*, 902 N.W.2d 822, 825 (Iowa Ct. App. 2017). There is no presumption in favor of either a mother or a father, *In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996), and child-custody decisions are not an issue of reward or fairness for the parents, *Hansen*, 733 N.W.2d at 696. While we consider an award of joint physical care when either parent requests it,[1] there is no presumption in favor of joint physical care. *See*

---

[1] In her appellate brief, Elisabeth maintains "neither party requested shared physical care." If she was correct, the district court's ruling would have to be modified, as the court may only order joint physical care after a parent requested it. *See, e.g., Gaswint v. Robinson*, No. 12-2149, 2013 WL 4504879, at *3 (Iowa Ct. App. Aug. 21, 2013). However, based upon our review of the record, Jeffrey asked the court to consider joint physical care in both his pretrial stipulation and his testimony at trial.

Iowa Code § 598.41(5)(a) (2016) (providing "the court may award joint physical care to both joint custodial parents *upon the request of either parent*" (emphasis added)); *Hensch*, 902 N.W.2d at 825 (reiterating the supreme court's earlier holding that section 598.41(5)(a) "does not create a presumption in favor of joint physical care" (quoting *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007))).

In deciding the optimal care arrangement for the child, we consider the nonexclusive factors set out by our legislature in Iowa Code section 598.41(3).[2] *See* Iowa Code § 600B.40(2) ("In determining the visitation or custody arrangements of a child born out of wedlock, . . . the court shall consider the factors specified in section 598.41, subsection 3."). We also consider (1) stability, continuity of caregiving, and approximation; (2) the ability of the parents to communicate and show mutual respect; (3) the degree of conflict between parents;

---

[2] The factors include, as relevant here:

a. Whether each parent would be a suitable custodian for the child.

b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.

c. Whether the parents can communicate with each other regarding the child's needs.

d. Whether both parents have actively cared for the child before and since the separation.

e. Whether each parent can support the other parent's relationship with the child.

f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.

g. Whether one or both the parents agree or are opposed to joint custody.

h. The geographic proximity of the parents.

i. Whether the safety of the child, other children, or the other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation.

Iowa Code § 598.41(3).

and (4) the degree to which the parents are in general agreement about their approach to daily matters. *Id.* at 695.

Upon our de novo review of the record, we agree with the district court that joint physical care is in the child's best interests. We recognize that there were initially some hard feelings between the parties in this case. Elisabeth was angry with Jeffrey for not being a support when the child was first born and diagnosed with her condition.[3] Jeffrey originally questioned paternity and the parties disputed what Jeffrey needed to learn about the child's physical condition before Elisabeth would allow him to have overnight visits with the child, which led Elisabeth to cut off Jeffrey's visits altogether for one and one-half years.

But, according to both parents' testimony, things went well after the court entered the temporary order granting Jeffrey visitation and setting up a visitation schedule. Elisabeth never took any action to prevent a scheduled visit, and the parents were flexible when visits needed to be changed due to issues with work or family matters. Additionally, Jeffrey and his wife[4] testified they would continue to support the child's relationship with Elisabeth, and Jeffrey's wife testified the child had never said anything that would lead the wife to believe Elisabeth has said negative things about Jeffrey in front of the child.

Jeffrey and Elisabeth have also been able to communicate regarding the child's physical condition. Jeffrey wanted to explore the option of using doctors and surgeons closer to Iowa to treat the child, but he and his wife also testified

---

[3] The child was born with a congenital condition that causes joint contracture in her upper extremities.

[4] After N.T. was born, Jeffrey married Charity, with whom he had an ongoing relationship.

they were willing to continue the child's treatment with her current out-of-state specialists if they could not find comparable care nearby. The child has a close relationship with her half-sibling, Elisabeth's older child, and at least one of her step-siblings, who lives with Jeffrey and his wife half the time. Additionally, the homes of the two parents, which are both satisfactory abodes for raising the child, are approximately twelve miles apart, with a school the child could attend between the two locations.

Applying the legal standards discussed above to the evidence in this record, we conclude that joint physical care is in the best interest of this child. These parents are both able and willing to parent this child and participate in her ongoing medical care, and she will benefit from getting to spend the maximum time with each of these loving and caring parents.

*B. Appellate Attorney Fees.* Next, we consider both parents' request for appellate attorney fees. An award of appellate attorney fees is within our discretion. *Spiker v. Spiker*, 708 N.W.2d 347, 360 (Iowa 2006). In deciding whether an award is warranted, we consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *Id.* (citation omitted). Here, while Jeffrey was successful on appeal, evidence at trial established that his hourly wage was approximately double what Elisabeth earned. We decline to award either party appellate attorney fees.

**AFFIRMED.**