# IN THE COURT OF APPEALS OF IOWA

No. 17-1562
Filed November 7, 2018

IN RE THE MARRIAGE OF SARAH J. TASSINARI
AND STEVEN P. TASSINARI

Upon the Petition of
SARAH J. TASSINARI,
        Petitioner-Appellee,

And Concerning
STEVEN P. TASSINARI,
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Wright County, Gregg R. Rosenbladt, Judge.

        Steven Tassinari appeals the economic provisions of the district court's decree dissolving his marriage to Sarah Tassinari. **AFFIRMED AS MODIFIED.**

        Dani L. Eisentrager of Eisentrager Law, Eagle Grove, for appellant.

        Becky S. Knutson of Davis, Brown, Koehn, Shors & Roberts, PC, Des Moines, for appellee.

        Heard by Danilson, C.J., and Potterfield and Doyle, JJ.

**DOYLE, Judge.**

Steven Tassinari appeals the economic provisions of his decree dissolving his marriage to Sarah Tassinari. Upon our de novo review, we affirm as modified.

### I. Standard of Review.

Because the district court hears dissolution-of-marriage proceedings in equity, our review is de novo. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016); *see also* Iowa Code § 598.3 (2016); Iowa R. App. P. 6.907. This requires examining the entire record and adjudicating the issue of the property distribution anew. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). Nevertheless, we give weight to the district court's factual findings, especially with respect to the credibility of the witnesses. *See id.*; *see also* Iowa R. App. P. 6.904(3)(g). Ultimately, the ruling will not be disturbed unless there has been a failure to do equity. *See Mauer*, 874 N.W.2d at 106.

### II. Background Facts and Proceedings.

Steven was born in 1961, and Sarah was born in 1963. They met in New Hampshire in the early 1980's. They began dating and then living together.

In 1993, after Sarah's grandmother passed away, Steven and Sarah moved to Iowa to live at and manage Sarah's family's farm, known locally as Vanderlip Farm. The farm was purchased by Sarah's great-grandparents and consists of approximately 160 acres of crop land and 70 acres of pasture. There was a brick farmhouse, a horse barn, cattle and machine sheds, a pump house, and a corn crib on the property. Sarah's mother and Sarah's aunt were born in the farmhouse, and the two women inherited an equal share of the farm after Sarah's grandmother died.

Steven and Sarah married in 1997. The two had no children. The parties lived at the farm rent-free in exchange for doing "some upkeep." Over the years, numerous repairs and improvements to the farm were made, including the "west wing" addition to the brick farmhouse, for which Sarah's mother and aunt paid. Though the two women hired someone to build the addition, many family members assisted. Steven, who had worked in construction, installed the drywall for the addition. Sarah helped paint. Sarah's uncle did the addition's wiring.

The other structures were repaired or constructed on the land over time. In 2004, the parties paid for the building of a swimming pool on the farm. In 2006, Steven and Sarah purchased an Amish cabin that was placed on the farm land overlooking the river. The cabin was not a permanent structure. It did not have a foundation or running water. The parties later sold the cabin.

The parties also raised cattle over the years on the land rent free. The farm rented out the farmland, and its income essentially paid for the farm's expenses.

Sarah's mother died in 2010. Sarah inherited, among other things, her mother's undivided one-half interest in the farm, and several bank accounts and financial instruments, including IRA accounts. Sarah's brother died in 2011, and he left Sarah his life insurance and pension. At the time of trial, the farm ground and pasture was valued at $1,285,000.

In 2011, the parties built a log home by the pool. Sarah testified she and Steven agreed to split the costs of building the home. She used about $200,000 of her inheritance from her brother for her share of half the cost of the log home. Sarah testified the parties took out a construction loan of $100,000, then they "put the CD on it," and she paid the monthly mortgage of $460 per month. She testified

she and Steven purchased a CD of $80,000 with monies in their joint savings account to secure their loan on the home, and she testified those were funds she received from her brother's inheritance. Sarah testified she and her aunt signed legal papers concerning the log home and the pool, so that if anything happened to Sarah, Steve could stay on the land.

Both Sarah and Steven were employed over the years. Sarah holds a bachelor's degree and has worked part-time for many years of the marriage—including the time since the parties moved to Iowa. At the time of trial, she was working twenty-four hours per week and did not have any physical inability to obtain full-time work. Steven had worked full-time since moving to Iowa. Steven's base salary at the time of trial was around $27,000, and in addition to his salary, he received a commission. From 2009 to 2015, Steven's sales commission was significant. However, in April 2015, Steven sustained a back injury at work, reducing his income substantially. Additionally, in 2016, Steven had open-heart surgery "to repair a hole in [his] heart and also rearrange some veins." There were complications, and Steven was still being medically treated for his heart condition. At the time of trial, Steven was working part-time and also receiving temporary partial payments as a result of his work injury. His 401(k), which he earned during the marriage, was worth $239,000. He also had a retirement annuity he earned during the marriage.

In August 2016, Sarah filed a petition for dissolution of marriage. At trial, Sarah requested her inherited property be set off from the property division. She also sought spousal support. Steven asked that Sarah's inherited property be part

of the court's equitable distribution calculation, noting the time he spent working on the farm and the parties' prior discussions concerning their retirement.

Following trial, the district court entered its decree dividing the parties' assets. The court found Steven had "made significant contributions to the marriage in terms of his attention to and work devoted toward the farm property." The court found he should be awarded one-half of the equity in the log home and the surrounding structures. The court declined to include in its equitable distribution calculation any other property inherited by Sarah from her mother, including the value of her share of the farm and the value her IRAs. The court likewise found Sarah's inherited property and assets from her brother should be set-off and not included in the equalization calculation, including a four-wheeler and funds Sarah deposited and commingled in a joint account. After an examination of the decree, the two orders following the parties' multiple motions pursuant to Iowa Rule of Civil Procedure 1.904(2), and the testimony and exhibits, we discern the court awarded Steven $241,898.38 in marital assets and debts of $15,664.20 for a net of $226,234.18. The court awarded Sarah $542,226.64 in marital assets and debts of $57,881.84, for a net of $484,384.80. The court ordered Sarah to pay Steven equalization payments totaling $110,870.40. Taking the equalization payments into account, Steven was awarded a net of $337,104.58 in marital assets and Sarah a net of $373,514.40. Sarah was also awarded over $1.2 million in inherited and gifted assets. The court found Steven inherited a retirement fund valued at about $4481. Steven appeals.[1]

---

[1] It is the appellant's duty to prepare and file an appendix containing parts of the district court record designated by the parties. *See* Iowa R. App. P. 6.905(2). The forty-eight

### III. Discussion.

Iowa Code section 598.21(5) (2016) requires marital property be divided equitably in dissolution-of-marriage cases. *See In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). This first requires a determination of which property is subject to division, and then, considering the factors set forth in section 598.21(5), that property must be divided equitably. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007).

"The partners in the marriage are entitled to a just and equitable share of the property accumulated through their joint efforts," *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009), but it "is important to remember marriage does not come with a ledger," *Fennelly*, 737 N.W.2d at 103. In determining how to equitably divide the property, an "equitable division is not necessarily an equal division." *Hansen*, 733 N.W.2d at 702. Though "it is generally recognized that equality is often most equitable," *Fennelly*, 737 N.W.2d at 102, "[e]quitable distribution depends upon the circumstances of each case," *Hansen*, 733 N.W.2d at 702. Consequently, precedent is of little value. *See McDermott*, 827 N.W.2d at 682. "[K]eeping in mind there are no hard and fast rules governing economic issues in dissolution actions," we must apply the factors contained in section 598.21(5) in reaching an equitable division. *Id.*

---

exhibits referenced in the table of contents do not include a concise description of each exhibit. Iowa R. App. P. 6.905(4)(c). Our mention of this failure to comply with rule 6.905 is not just nitpicking; "[r]ule compliance lightens the court's burden and promotes judicial efficiency because compliance begets uniformity, and uniformity eases the court's navigation through the thousands of briefs and appendices it reviews each year." *City of Monroe v. Nicol*, 898 N.W.2d 899, 901 (Iowa Ct. App. 2017).

With respect to our first task, section 598.21(5) requires that "all property, except inherited property or gifts received or expected by one party" be equitably divided between the parties. Inherited property, the category of excluded property we are concerned with in this case, is normally awarded to the individual spouse who owns the property, independent from the equitable distribution process. *See In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)*; see also* Iowa Code § 598.21(6). This exclusion is not absolute, however. Section 598.21(6) creates a unique hybrid system that permits the court to divide inherited property if equity so demands. *See Schriner*, 695 N.W.2d at 496. The statute provides:

> Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

Iowa Code § 598.21(6).

In determining whether it would be inequitable to Steven to refuse to include Sarah's inheritance in the marital estate, we consider the following:

> "(1) contributions of the parties toward the property, its care, preservation or improvement;
> (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;
> (5) any other matter which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee."

*In re Marriage of Goodwin*, 606 N.W.2d 315, 319 (Iowa 2000) (citations omitted).

We also consider the length of the marriage, the amount of time the property was

held after it was devised, and whether the parties enjoyed a substantial rise in their standard of living as the result of the inheritance. *Id.* at 319-20; *see also In re Marriage of Thomas*, 319 N.W.2d 201, 211 (Iowa 1982).

### A. Farm.

Steven does not dispute Sarah's interest in the farm was acquired by inheritance. He argues the length of the parties' marriage and his considerable time devoted to the property make it inequitable to exclude the total value of Sarah's share of the property from marital assets. The district court allotted Steven one-half of the equity in the log home but no more. Considering all relevant factors, we find no reason to disturb the district court's decision upon our de novo review.

To be sure, Steven has spent time maintaining and managing the farm over the years. However, he was not alone in that endeavor. The "west wing" addition was paid for by Sarah's mother and Sarah's aunt. Steven was one of several family members that assisted with the project.

Moreover, the farm was not the source of the parties' livelihood. Both parties were able live rent-free on the property over the years, and both were able to benefit from the arrangement, growing their wealth over the years. We do not find it was inequitable to exclude the remainder of Sarah's interest in the farm as marital property.

Steven argues a written 2014 family agreement gave him an equitable interest in the farm. There was considerable testimony during trial concerning the agreement. Steven asserted at trial that he believed the agreement gave him an interest in the farm property. Sarah denied Steven's assertion. There is no record of any arguments concerning the agreement being made to the district court. The

district court's only mention of the agreement in the decree was to acknowledge the agreement provided "that Sarah and Steven would pay for the insurance on the [the log home] and for repairs, and that the farm would pay taxes on the property." The court made no ruling as to whether or not the agreement granted Steven an equitable interest in the farm. Steven only mentioned in passing the agreement in his first rule 1.904(2) motion. There, Steven stated:

> The log home and surrounding structures are no doubt marital assets. The parties constructed this property with their own money and an agreement was put in place with the other owner because of the sizeable asset. It is the position of Steven that the log home is a true marital asset equally divisible by the court.

Although Steven argued he was entitled to an equitable portion of the farm because of his contribution to the farm's maintenance and improvement and for his years of attention and devotion to the property, Steven made no pitch to the court that the agreement entitled him to an equitable portion of the farm. The district court did not address the issue in its first rule 1.904(2) order. Steven made no mention of the issue in his resistance to Sarah's second rule 1.904(2) motion, nor was it addressed in the court's order.

It is axiomatic that in order to preserve error, the issue must be raised and decided by the district court. *See Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002) (observing that an issue is preserved for review if it has been raised and decided by the district court). Steven has not preserved error on this issue. Even if he had preserved the issue for appeal, we agree with Sarah that the agreement only granted Steven a limited life estate interest in the log home, i.e., that he would be allowed to live in the log home if Sarah predeceased him while they were married. Accordingly, we affirm on this issue.

### B. Black Polaris Four-Wheeler.

Likewise, we find no reason to disturb the district court's finding that the black Polaris four-wheeler Sarah inherited from her brother should not be included as an asset in the division of property. It is true Steven put his name on the title, but there is no evidence Sarah gifted the four-wheeler to him. Considering all of the relevant factors, we do not find it was inequitable to exclude the asset from the overall division of property. We therefore affirm on this issue.

### C. CD and Joint Account Set-Off; Fidelity Account.

Steven argues the court erred in setting off the $75,196.79 CD that secured the finish of the log home and the $63,298.51 joint account savings number xx586 as Sarah's inherited funds. He similarly argues the funds in the Fidelity IRA left to Sarah from her mother should not have been excluded. We disagree. Though the funds in the joint savings account were commingled, the amounts commingled were easily identifiable. The same can be said for the funds used in acquiring the CD. Finally, the IRA was never commingled. Given the overall property division and consideration of the relevant factors, we do not find excluding these items from the division of property as Sarah's inherited property inequitable. We therefore affirm on this issue.

### D. Kubota Tractor.

Steven argues the court erred in setting off $40,644.96 to Sarah as inherited property used to purchase a Kubota tractor. At the time of trial the tractor was worth $50,000. The court found Sarah established she used inherited funds to purchase the majority of the cost of the tractor. The court determined the proportioned marital contribution amounted to $10,169.38 and Sarah's

proportioned inherited property contribution amounted to $40,644.96.[2] Steven was awarded the tractor, and Sarah was awarded $5084.69 as the value of one-half the marital contribution. Set off as inherited property, the $40,644.96 was not included in the property division.

Upon our de novo review, we disagree with Steven that the court's allocation of the Kubota tractor was inequitable. Although the funds paid towards the tractor's purchase, which Sarah claims as inherited funds, came from comingled joint checking account funds, the source of those funds is readily apparent; the source of the funds were Sarah's inheritance. We find no error on the court's part in setting off $40,644.96 from the property division as Sarah's inheritance. We therefore affirm on this issue.

### E. Division of Steven's Retirement and Pension Accounts.

Steven also argues the court's equal division of his retirement and pension accounts between the parties was inequitable. We disagree. These accounts were earned during the parties' marriage. Considering the relevant factors, we do not find the equal division inequitable. We therefore affirm on this issue.

### F. Equitable Division.

Steven argues the court's property division is not equitable. Even after taking into account the equalization payments from Sarah to Steven, his net marital property award by the district court was $36,409.82 less than Sarah's. Under the

---

[2] The tractor was purchased in 2011 for $61,459. By the time of trial, the tractor's value had decreased to $50,000, or 81.35% of its purchase price. Sarah claimed she contributed $49,960 in inherited funds and Steven paid $12,500 from earnings during the marriage. The court used 81.35% of these figures in its property division.

totality of circumstances, we find division of the marital assets should be equal. Steven should be awarded another $18,204.91 to balance the ledger sheet.

### G. *Appellate Attorney Fees*.

Finally, Steven requests appellate attorney fees. Whether to award appellate attorney fees is within our discretion. *See Spiker v. Spiker*, 708 N.W.2d 347, 360 (Iowa 2006). An award of appellate attorney fees depends on three factors: (1) the needs of the party making the request, (2) the ability of the other party to pay, and (3) whether the party making the request was obligated to defend the trial court's decision on appeal. *See id*. After considering the appropriate factors, we determine no appellate attorney fees should be awarded.

### IV. *Conclusion*.

Based upon the foregoing, we modify the district court's decree, as twice amended by its orders of August 31, 2017 and September 22, 2017, by increasing the equalization payment to Steven from $110,870.40 to $129,075.31. We affirm in all other respects. Any costs are assessed equally to the parties.

**AFFIRMED AS MODIFIED.**