# IN THE COURT OF APPEALS OF IOWA

No. 19-0995
Filed October 9, 2019

**IN THE INTEREST OF M.P. and M.P.,**
**Minor Children,**

**J.P., Father,**
      Appellant.
_____

Appeal from the Iowa District Court for Montgomery County, Amy Zacharias, Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Ivan E. Miller, Red Oak, for appellant father.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal) and Mary T. Triick, Assistant Attorneys General, for appellee State.

Karen Mailander of Mailander Law Office, Anita, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Mullins and May, JJ.

**MAY, Judge.**

The juvenile court terminated the father's parental rights to his children, M.J.P. and M.F.P.[1]  On appeal, the father contends the juvenile court erred in (1) concluding the statutory grounds authorizing termination were met, (2) determining termination is in the children's best interests, and (3) declining to rely on permissive factors to forgo termination.  We affirm the juvenile court.

### I. Background Facts and Proceedings

The father and mother met in 2011 and married in 2012.  The mother already had three children from a prior relationship.[2]  M.J.P. and M.F.P. were born to the couple in 2012 and 2014, respectively.  But by 2015, the parents separated.  In 2016, the mother and the children moved in with the mother's paramour.

The Iowa Department of Human Services (DHS) became involved when a therapy provider reported that the mother suggested she was having difficulty caring for the children.  Also, the children appeared dirty, hungry, and inadequately clothed.  DHS inspected the home and found the children's bedroom to be in "deplorable" condition.  Interviews with the older children revealed the children were often left unsupervised and had inadequate food.

The mother and her paramour submitted to drug testing; the paramour tested positive for methamphetamine.  A DHS worker informed the mother child-in-need-of-assistance proceedings would be initiated and advised her to have the three oldest children return to their father's care to avoid adjudication.  The mother complied.

---

[1] The mother's parental rights were not terminated.
[2] These three children are not at issue in this proceeding.

Following a child-protective assessment, M.F.P. and M.J.P.'s father behaved in a concerning manner. He threatened to withhold the children after his visitation. He also sent up to one-hundred messages per day to a family safety, risk, and permanency (FSRP) worker assigned to the family. During a meeting between concerned parties, the father became aggressive toward the mother.

In January 2017, the juvenile court formally adjudicated M.F.P. and M.J.P. as children in need of assistance. The court also removed both children from the parents' custody.

In February, the court entered a two-year no-contact order prohibiting the father from contacting the mother.

Following adjudication, the mother made strides. She ended her relationship with her paramour. She successfully completed both inpatient and outpatient substance-abuse treatment and engaged in mental-health services. She also completed several parenting programs.

The father completed a requested substance-abuse evaluation, which indicated he did not require any substance-abuse treatment. He also submitted to a mental-health evaluation. Additionally, he completed five therapy sessions and received a letter from a therapist stating the therapist was "aware of no information that would lead [him] to believe or conclude that [the father] has a problem with anger."

Even so, the father struggled to behave appropriately in front of the children. For example, during an April 2017 visit, the father became upset about the content of an FSRP report; began pacing around the FSRP worker; accused her of lying; ended the visit early; instructed the children to "ask [the FSRP worker] why she is

so mean to daddy"; yelled "bitch" at the worker while making an obscene hand gesture; and then struck the hood of the FSRP van while the children were inside the vehicle.

By May 2017, the court returned the children to mother's care, subject to DHS supervision.[3] And the father received unsupervised overnight visits with the children in August and September.

But DHS became aware of allegations that the father sexually abused the mother's older children when they all lived together. The children disclosed the abuse after returning to their father's home out of state. Because of these allegations, M.J.P. and M.F.P.'s visitation with their father returned to fully supervised.

In January 2018, DHS completed child-protective assessments of the father's alleged sexual abuse of the mother's older children. Three founded assessments listed the father as the individual responsible for the abuse.[4] The father appealed one of these findings and reached a settlement agreement that modified the category of founded abuse. As a result of these findings, the juvenile court ordered the father submit to a psychosexual evaluation. But the father did not comply.

---

[3] In late 2017, the mother used methamphetamine, and the children were again removed from her care. However, the court returned the children to the mother's care in March 2018.

[4] The mother was also found responsible for denial of critical care in connection with these instances of abuse.

He also ceased contact with the children in 2018 for at least four months. The FSRP worker attempted to facilitate supervised visitations during this period. But the father stated he did not want her to contact him anymore.

Eventually, the father resumed supervised visitation with the children. Then visitations were suspended following a concerning visit in April 2019.

Later that month, the juvenile court held a termination hearing. At the hearing, the father objected to the court's consideration of the founded child-abuse assessments involving the mother's older children. He also objected to the court's consideration of his own juvenile record, which showed he had sexually abused his younger sister when he was a juvenile. The juvenile court overruled these objections.

Ultimately, the court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2018). The father appealed. Our supreme court transferred the case to this court.

**II. Merits of Termination**

**A. Standard of Review**

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented." *In re C.S.*, No. 13-1796, 2014 WL 667883, at *1 (Iowa Ct. App. Feb. 19, 2014). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

**B. Analysis**

We use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we must determine whether a ground for termination under Iowa Code section 232.116(1) has been established. *Id.* at 472–73. If a ground for termination has been established, we must then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473. Finally, we must consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

*1. Grounds for Termination*

Our first step is to determine if a ground for termination under section 232.116(1) has been established. *See id.* at 472–73. "The State has the burden of proving the grounds for termination by clear and convincing evidence." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to address grounds for termination under Iowa Code section 232.116(1)(f).

Section 232.116(1)(f) authorizes termination of a parent's parental rights when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The father challenges the fourth element, whether the children could be returned to his care. Following a careful review of the record, we conclude the children could not be returned to the father's care.

He contends that if the court had not ordered the psychosexual evaluation—which he never completed—then the court would not have determined the children could not return to his care.[5] This contention demonstrates the father's inability to appreciate the extent of his parenting deficiencies.

To begin with, the court's order for a psychosexual evaluation was entirely appropriate given the father's documented history of sexually abusing young children.[6] The father's unilateral determination that the evaluation was unnecessary—and his refusal to comply with the court's order—are troubling. And they only served to hinder his psychological health. If properly completed, the evaluation could have provided insight as to what support the father needed to address his sexual-abuse issues.

In any event, the father's recent history of sexually abusing children clearly weighs against reunification. The father suggests res judicata bars the court from

---

[5] While challenging the statutory grounds for termination, the father contends the court also would have been able to return the children to his care in six months. But Iowa Code section 232.116(1)(f) only requires the State to show the children could not be returned at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

[6] The father urges his juvenile history of sexually abusing his sister should not be considered because it is "highly prejudicial." However, his juvenile history is also highly probative because it provides critical context for DHS and the juvenile court's determination that he should complete a psychosexual evaluation.

considering the sexual-abuse assessments because one assessment was modified in a settlement agreement. However, the sexual conduct underpinning that assessment remains unchanged. And two other assessments involving sexual abuse went unchallenged.[7] Moreover, the doctrine of res judicata is wholly inapplicable here. *Cf. Spiker v. Spiker*, 708 N.W.2d 347, 353–54 (Iowa 2006) (explaining when the doctrine of res judicata is applicable).

Without any subsequent treatment or counseling, we have no reason to believe he will discontinue this abusive conduct. More troubling still, the children at issue here began to display sexualized conduct. One child mentioned a "special daddy-daughter dance" while dancing in a seductive manner.

Additionally, the father does not recognize the impact of his ongoing, inappropriate conduct toward adults involved in his children's lives. He frequently reverts to harassment, intimidation, and coercion. He does not appreciate the negative impact this has on the children.

These conditions make it clear the children cannot be returned to the father.

The father also contends, however, his reunification was hindered because the State failed to make reasonable efforts. We recognize "[t]he State must show reasonable efforts as part of its ultimate proof the child[ren] cannot be safely returned to the care of a parent." *C.B.*, 611 N.W.2d at 493. "When assessing reasonable efforts, the safety and health of the children 'shall be the paramount concern.'" *In re K.W.*, No. 2-560, 2002 WL 1842962, at *1 (Iowa Ct. App. Aug. 14,

---

[7] To the extent the father challenges the procedural posture of these assessments in his petition on appeal, we note this termination-of-parental-rights appeal is not the proper vehicle to do so.

2002) (quoting Iowa Code § 232.102(10)(a) (2001)); *accord* Iowa Code § 232.102(12)(a) (2018).

We find the father waived this issue by failing to bring his complaint to the juvenile court's attention prior to the termination hearing. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). And even if had he preserved this issue, the father's claim is unavailing. He takes issue with being ordered to complete the psychosexual evaluation while the mother was offered the RSafe class instead.[8] But the reasonable-efforts mandate does not create a menu from which discerning parents may order specific services. Rather, it is intended to provide services that facilitate reunification given the parent's circumstances. This father has a demonstrated history of sexual abuse. He needed an initial psychosexual evaluation to determine how to address his history of abuse. This service was appropriate given the father's history. *See C.B.*, 611 N.W.2d at 493 (noting reasonable efforts focuses "on services to improve parenting").

In short, although DHS made reasonable efforts toward reunification, the children could not be safely returned to the father. A statutory ground for termination has been established. The first step of our analysis is complete.

---

[8] RSafe offers a variety of services designed to address sexual abuse. *See RSafe (Sexual Abuse Treatment)*, Lutheran Family Services, https://www.lfsneb.org/service/sexual-abuse/ (last visited Sept. 24, 2019) (describing various programing options); *see also* Tim Johnson, *The Hopeful Therapist: Ratliff, RSafe Program Tackle Sex-Related Issues*, The Daily Nonpareil (May 23, 2017), https://www.nonpareilonline.com/news/faces/health/the-hopeful-therapist-ratliff-rsafe-program-tackle-sex-related-issues/article_d5a3d77e-3f21-11e7-95a0-bb471641877b.html (describing the purpose of the RSafe program). On our record, it is not clear which RSafe class the mother engaged in.

### 2. Best-Interest Framework

Our next step is to consider the best-interest framework set forth in section 232.116(2). *A.S.*, 906 N.W.2d at 473. Section 232.116(2) provides in relevant part:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

*See also* Iowa Code § 232.116(2)(a), (b), (c) (identifying factors that may be relevant to the court's best-interest analysis).

Applying this framework here, we conclude termination of the father's parental rights is in the children's best interests. We look to the past for indicators of what is likely to occur in the future. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) ("When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." (quoting *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997))). The children are afraid of their father and are doing well in their mother's care. Given their fear and the father's established history of sexual abuse, we conclude termination is in the children's best interests. The second step of our analysis is complete.

### 3. Exceptions

Next, we consider section 232.116(3), which provides as follows:

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> (a) A relative has legal custody of the child.
> (b) The child is over ten years of age and objects to the termination.

(c) There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.

(d) It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.

(e) The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

"[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. If the parent proves an exception, this court *may* conclude termination is inappropriate. *Id.* We are not, however, *required* to reach that conclusion. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Rather, we exercise our discretion "based on the unique circumstances of each case and the best interests of the child[ren]" to determine whether the parent-child relationship should be saved. *Id.* (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)).

The father asserts the strength of the parent-child bond should preclude termination pursuant to section 232.116(3)(c). We disagree. As previously mentioned, the children are fearful of their father. We find any bond between the father and the children is not so strong to overcome the father's parenting deficiencies. *See D.W.*, 791 N.W.2d at 709 ("[O]ur consideration must center on whether the child[ren] will be disadvantaged by termination, and whether the disadvantage overcomes [the parent]'s inability to provide for [the children]'s developing needs."). We conclude this step is satisfied.

**III. Conclusion**

For the reasons stated, we conclude the juvenile court properly terminated the father's parental rights.

**AFFIRMED.**