# IN THE COURT OF APPEALS OF IOWA

No. 19-1118
Filed November 6, 2019

**IN THE INTEREST OF J.R. and D.R.,**
**Minor Children,**

**J.R., Mother,**
    Appellant,

**R.R., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Warren County, Brendan Greiner,

District Associate Judge.

A mother and father appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**

Tara M. Elcock of Elcock Law Firm, PLC, Indianola, for appellant mother.

Blake D. Lubinus of Lubinus & Merrill, P.L.C., Des Moines, for appellant

father.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal)

and Mary A. Triick, Assistant Attorneys General, for appellee State.

M. Kathryn Miller of Juvenile Public Defender Office, Des Moines, attorney

and guardian ad litem for minor children.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**DOYLE, Presiding Judge.**

A mother and father separately appeal the termination of their parental rights. Upon our de novo review, we affirm on both appeals.

### I. Background Facts and Proceedings.

J.R. is the mother and R.R. is the father of J.R., born in 2004, and D.R., born in 2005. In June 2017, the children were removed from the parents' care after the family home was found to be inhabitable; it was also alleged the parents were using methamphetamine. The children were placed in the custody of their adult half-brother under the supervision of the Iowa Department of Human Services (DHS). The children were adjudicated as children in need of assistance (CINA), and services for reunification of the family were offered to each parent. The parents were directed that each parent would "need to address substance use as evidenced by [engagement] with [appropriate] mental health and substance abuse treatment" before the DHS could recommend the children be returned to the parents' care. The parents were advised each would need to learn and show "age appropriate parenting with problem solving and communication methods needed to keep the children safe and meet their needs," which they would show by "modeling these skills in front of the children."

A permanency review hearing took place on July 6, 2018, under Iowa Code section 232.104 (2018). Before a permanency order was entered, the children's attorney and guardian ad litem on September 14, 2018, filed a motion requesting that visitation between the parents and children be suspended. The motion stated the parents' behavior had "become so erratic, hostile, and out of control" the children did not want to have contact with the parents until they could show their

visits would be positive. One of the children reported the mother came to the child's place of employment and made a scene noted by the child's employer. The parents had also been asked not to come to the guardian's home but continued to do so. The parents reported to the DHS the guardian and his spouse had tried to run the parents off the road, but the children, their guardian, and his spouse all denied this happened.

On September 20, 2018, a hearing on the children's motion to suspend visitation was held. The children testified at the hearing. Among other testimony, one child testified it was his preference that the parents not come to his football games; it made him "a little bit anxious to wonder what they might do when [he's] there at the game." Though there had been no issues with his parents at his games before, the child did not think having them there "seem[ed] very safe" and found their behavior to be unpredictable.

Four days later, the juvenile court entered its permanency order. The court found the parents had been unable "to successfully complete substance-abuse treatment, therapy and visitation" as directed. Even so, the juvenile court found termination of the parents' parental rights was not in the children's best interest at that time "due to the age of the children, bond established and potential loss of public benefits and inheritance." The court opted to establish a guardianship of the children with their elder sibling and his wife as guardians, finding it was the least restrictive disposition and in the children's best interests. The court did not address the children's prior motion or set out any provisions for visitation in the permanency order. But the same day, the court denied the children's motion, stating the court's "permanency order has addressed the visitation matter." The

court also entered a no-contact order directing the parents not to contact the children's guardian.

The father appealed the permanency order, and a panel of this court affirmed the decision, concluding the juvenile court "appropriately transferred guardianship and custody of the children to the relative." *In re J.R.*, No. 18-1922, 2019 WL 719054, at *3 (Iowa Ct. App. Feb. 20, 2019). This court noted that the juvenile court could have terminated the father's parental rights, given the facts of the case. *See id.* But the court agreed with the juvenile court's decision "not to invoke this remedy in the hopes that the parent-child relationship, however fraught, might repair itself over time," because it was "in the children's best interests." *Id.* Procedendo issued in March 2019.

Just before the father's filing of the appeal, the parents moved to establish visitation post-permanency. Then, while the appeal was pending, the mother sent the juvenile court a letter demanding that the court issue an order putting the children's "safety as a priority," as well as demanding she be allowed to exercise her parental rights. The court set a hearing on the issues raised by the mother. The day of the hearing, the juvenile court entered a no-contact order between the children and persons the mother alleged to have harmed the children.

In January 2019, the mother moved to dismiss the no-contact order entered between the parents and the children's guardian. She argued there was no basis for the order and it violated her constitutional rights. In February 2019, the juvenile court addressed the parents' visitation motion and amended its prior orders to include conditional visitation provisions. The court clarified the parents could have one weekly visit with the children if they met two conditions: Each parent had to

provide "three clean random UA's over an eighteen-day period or a clean hair analysis or patch," as well as a recent report from his or her therapist on the parent's current mental-health condition.

In April 2019, the juvenile court denied the mother's request to dismiss the no-contact order between the parents and the children's guardian, finding the no-contact order was necessary and remained in the children's best interests. The court pointed out there was no evidence either parent had tried to satisfy the conditions the court had set for visitation to occur. Thus, there was no reason to disturb the no-contact order.

Because the parents maintained they wanted to have visits with the children, the DHS requested the parents provide a drug screen under the court's order, but neither parent responded. The parents continued to call and text the children against their wishes. The mother attended one of the children's football games and made a scene, demanding that a police officer verify the paint on the child's face was paint and not bruises, to the child's horror. In April 2019, the father met with the DHS case manager and seemed to be having a breakthrough. The father admitted he had been using methamphetamine during the entirety of the case. The father explained he was separating from the mother and "was making a change." He wanted to reconnect with his children.

The children were not interested in reconnecting with the parents. By that point, the DHS and the children believed the parents were interfering with "the children's placement" to the point they had not settled "into a life free from their parents' chaotic behaviors." The children requested their parents' parental rights

be terminated because both parents "continue to show the same behaviors as they have in the past that led to the children's removal."

The State then petitioned for termination of the parents' parental rights. Following a hearing, almost two years after the CINA proceedings began, the juvenile court terminated the parents' parental rights. Although the court had "held out a small glimmer of hope" the family could reunify, the court concluded continuing the relationship harmed the children's welfare. The parents' individual circumstances had worsened. At the time of the termination-of-parental-rights hearing, each parent had pending criminal charges and the father was in jail. The parents had separated. It appeared both parents continued to use methamphetamine. The children continued to want nothing to do with their parents. The court determined the State proved the statutory grounds for termination in paragraphs (f) and (*l*) of section 232.116(1), termination of parental rights was in the children's best interests, and no factors against termination applied to preclude termination of parental rights.

The parents appeal separately.

## II. *Standard of Review.*

We review a juvenile court's decision to modify a permanency order de novo. *In re N.M.*, 528 N.W.2d 94, 96 (Iowa 1995). We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *See In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003). Although we give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, we are not bound by them. *In re A.S.T.*, 508 N.W.2d 735, 737 (Iowa Ct. App. 1993).

### *III.  Discussion.*

Both parents challenge the juvenile court's decision to discontinue the guardianship and terminate parental rights.  They also challenge the grounds for termination found by the court.  Separately, the father argues the court was precluded from terminating his parental rights based on res judicata and other related legal doctrine.  He also argues the State failed to prove there was a substantial change in circumstances to modify the permanency order.  The mother challenges entry of the no-contact order.

### *A.  Applicable Principles.*

Under Iowa Code chapter 232, a juvenile court has several placement options following a permanency hearing.  *See* Iowa Code § 232.104(2).  Generally the court can (a) return the child home, (b) grant additional time for reunification, or (c) direct the State to begin termination-of-parental-rights proceedings.  *See id.* The court may also, as it did here, transfer guardianship and custody of the child to a suitable person.  *See id.* § 232.104(2)(d)(1).

Once a termination-of-parental-rights proceeding is started from a CINA case, the juvenile court can terminate a parent's parental rights if: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights." *A.S.*, 906 N.W.2d at 472-73.[1]  In determining whether termination of parental rights

---

[1] Although the juvenile court must address all three steps in terminating a parent's parental rights, we will not address any step on appeal a parent does not

is in a child's best interests, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2).

**B. Grounds for Termination.**

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to address grounds for termination under Iowa Code section 232.116(1)(f). Under paragraph (f), the State must prove (1) the child is four or older, (2) has been adjudicated a CINA, (3) has been removed from the parent's physical custody the requisite amount of time, and (4) "there is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102." Iowa Code § 232.116(1)(f). Neither parent disputes that the State proved the first three elements of paragraph (f). But they both contest the juvenile court's finding the State proved the last element.

Both parents point out the children were in a guardianship established under section 232.102, and they insist the existence of the section 232.102 guardianship means the last element was satisfied. Alternatively, the father maintains the guardian must be substituted in the paragraph as the "parent" because the guardian is essentially acting as a "parent." We disagree on both counts. Neither

_____

specifically challenge. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *see also* Iowa Code § 232.116(1)-(3).

parent points us to—nor do we find—any authority for such an interpretation of the language of the last element of paragraph (f). The definition of the word "parent" as used in chapter 232 is set out in section 232.2(39):

> "Parent" means a biological or adoptive mother or father of a child; or a father whose paternity has been established by operation of law due to the individual's marriage to the mother at the time of conception, birth, or at any time during the period between conception and birth of the child, by order of a court of competent jurisdiction, or by administrative order when authorized by state law. "Parent" does not include a mother or father whose parental rights have been terminated.

Similarly, "guardian" is defined in section 232.2(21):

> "Guardian" means a person who is not the parent of a child, but who has been appointed by a court or juvenile court having jurisdiction over the child, to have a permanent self-sustaining relationship with the child and to make important decisions which have a permanent effect on the life and development of that child and to promote the general welfare of that child.

Neither definition allows for an interpretation that the words "parent" and "guardian" are interchangeable. This makes sense, since section 232.116(1) concerns grounds for termination of *parental* rights.

Section 232.116(1)(f)(4)'s use of "as provided in section 232.102" refers us back to section 232.102. Reviewing that section in its entirety, subsection 11 states in pertinent part:

> The court shall hold a periodic dispositional review hearing for each child in placement pursuant to this section in order to determine whether the child should be returned home, an extension of the placement should be made, a permanency hearing should be held, or a termination of the parent-child relationship proceeding should be instituted. The placement shall be terminated and the child returned to the child's home if the court finds by a preponderance of the evidence that the child will not suffer harm in the manner specified in section 232.2, subsection 6.

This part of section 232.102 has been referenced in relation to section 232.116(1)'s use of the phrase "as provided in section 232.102." *See In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988) ("The proof must only show that any of the alleged definitional grounds of a child in need of assistance in section 232.2(6) exist at the time of the termination hearing."); *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) ("For example, a child cannot be returned to the parent under Iowa Code section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication."); *see also In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

Having reviewed chapter 232 and relevant cases, we find unreasonable the interpretation that the language of section 232.116(1)(f)(4) is somehow inapplicable or changed if the child has been placed in a guardianship under section 232.104 as part of a permanency determination.

We note the mother also contends there was evidence the children could be returned to her care at the time of the termination-of-parental-rights hearing, asserting "she has the ability now to stay sober, is separated from [the father], and she has a bonded, loving relationship with her children." But there is no evidence in the record the mother had made any real attempts to stay sober, let alone address her substance-abuse issues in the two years the case was pending. Additionally, the testimony at the hearing was unclear about the status of the mother's relationship with the father except that he was incarcerated at the time of the hearing. There was no testimony or evidence the mother intended to divorce the father. The father himself gave a statement at the hearing and continued to call the mother his wife. Finally, we believe the mother does love her children. But

it is their wish that her parental rights be terminated because the mother's actions and inability or unwillingness to address her substance-abuse and mental-health issues. The last incident at the football game is telling. The mother knew how worried the child was that she would make a scene—not something that is uncommon for a teenager. Even so, rather than wait to get more information— even though she admitted at the termination-of-parental-rights hearing that the matter did not require immediate attention—the mother called the police to investigate. Then, even after she was told the child's face was not bruised—he was wearing a face paint common in sports—the mother did not believe the child was not bruised. The mother's testimony did not evidence she understood why her actions were not ideal or even against the child's wishes.

Simply put, there was no evidence at the hearing that the children could be safely returned to either of the parent's care at that time. *See In re C.F.-H.*, 889 N.W.2d 201, 206 (Iowa 2016) (explaining "[t]he words 'resume' and 'returned' imply restoration of a previous custody situation" as used in the fourth element of paragraph (f)); *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (determining that "[a]t the present time" refers to the time of the termination hearing). Thus, the State proved by clear and convincing evidence the grounds for termination set forth in section 232.116(1)(f).

### C. Res Judicata.

The father also argues we need not reach the sufficiency of the grounds for termination found by the juvenile court because "the facts pleaded by the State in its [termination] petition and argued before the juvenile court were the same set of facts that were presented and argued before the juvenile court in the permanency

hearing that began on June 18, 2018 and concluded on July 6, 2018." Asserting the juvenile court "relied on evidence that had previously been litigated," the father contends "it was improper to render a new decision based on that exact same evidence."

The doctrine of res judicata prevents relitigation of a claim or issue of fact or law previously litigated in a prior action. *See George v. D.W. Zinser Co.*, 762 N.W.2d 865, 868 (Iowa 2009); *see also Spiker v. Spiker*, 708 N.W.2d 347, 353 (Iowa 2006) ("The doctrine of res judicata embraces the concepts of claim preclusion and issue preclusion.").

> In order to determine whether an order granting continuing relief has preclusive effect in a later action (i.e., is a "final judgment" for res judicata purposes), we ask "whether the issues in the two actions are materially different because of events which occurred in the interim, in which case preclusion is to be denied." In other words, the first judgment does not have a preclusive effect in the second action if circumstances have changed sufficiently to warrant modifying the decree.

*Spiker*, 708 N.W.2d at 353 (internal citations omitted). Moreover, the res judicata standard is relaxed in matters on the custody of children "because our goal in such cases is always to serve the best interests of the child." *Id.* at 356; *see also* Iowa Code § 232.1 ("This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive . . . the care, guidance and control that will best serve the child's welfare and the best interest of the state.").

Here, though most of the matters explicitly set out in the State's termination-of-parental-rights petition had been discussed before entry of September 2018 permanency order, not all of the material was old. The mother's actions at the child's game violated the child's wishes and the child's best interests. The child

knew his mother's behavior was escalating. By the hearing, the parents had pending criminal matters. Given the changes in the parents' behavior since entry of the permanency order, the doctrine of res judicata does not apply to prevent the termination of the parents' parental rights.

### D. Material Change in Circumstances.

The father similarly argues the State did not offer evidence of a material change in circumstances to justify a change in the permanency plan.

> Our case law provides that "modification of custody or placement requires a material and substantial change in circumstances." *In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991). But our court has recently considered whether the requirement persists after the 2004 amendment to section 232.103. *See In re M.M.*, No. 16-0548, 2016 WL 4036246, at *4-5 (Iowa Ct. App. July 27, 2016) (Potterfield, J., dissenting); *see also In re A.S.*, 17-0663, 2017 WL 2665119, at *1 n.1 (Iowa Ct. App. June 21, 2017); *In re A.J.*, No. 16-1954, 2017 WL 1278366, at *3-4 (Iowa Ct. App. Apr. 5, 2017).

*In re A.W.*, No. 19-0352, 2019 WL 2880045, at *3 (Iowa Ct. App. July 3, 2019). That said, "[o]ur primary concern in a proceeding of this nature is the best interests of the children." *D.S.*, 563 N.W.2d at 14. Upon our de novo review of the record, we conclude that the State met its burden to show a substantial change of circumstances.

Though the children argued in September 2018 that their parents' behaviors were erratic and escalating beyond their comfort, the court still determined a permanent guardianship with their elder brother was the least restrictive disposition that was in the children's best interests. But the parents' actions further escalated after entry of the permanency order. Both parents were facing criminal charges, the parents continued to contact the children against their wishes, the mother made a scene at the child's football game, and, importantly, the children were more

adamant than ever that they wanted their parents' parental rights terminated. The parents' actions were weighing heavily on their children. It is clear they would have preferred not to seek the drastic remedy of termination of their parents' parental rights, but they wanted their parents to pursue their treatment options; the parents did not do that. *See In re S.J.*, 451 N.W.2d 827, 832 (Iowa 1990) ("Termination is an outcome of last resort."). Upon our de novo review of the record, we find clear and convincing evidence showing there was a material and substantial change in circumstances to support modification of the permanency order. It is clear, given the parents' actions between the entry of the permanency order and the termination-of-parental-rights hearing, it was in the children's best interests for the parents' rights to be terminated. These children need permanency, and the record unfortunately shows why that could not be achieved through a permanent guardianship.

### E. No-Contact Order.

Finally, the mother argues the no-contact order entered preventing the parents from contacting the guardian was inappropriate and entered without authority. But since the parents' parental rights have been properly terminated, the mother's issue is moot. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013) ("Ordinarily, an appeal is moot if the 'issue becomes nonexistent or academic and, consequently, no longer involves a justiciable controversy.'" (citation omitted)). "It is our duty on our own motion to refrain from determining moot questions." *Homan v. Branstad*, 864 N.W.2d 321, 327 (Iowa 2015) (citation omitted). We therefore decline to address the issue any further.

*IV. Conclusion.*

Here, the State proved a ground for termination of the parents' parental rights. The record shows termination of parental rights was in the children's best interest. There was a material change in circumstances to support modification of the permanency order from placing the children in a guardianship to termination of parental rights with the possibility of adoption by their guardian. Res judicata and related doctrine does not apply, and the mother's issue on the entry of a no-contact order is moot. For all of these reasons, we affirm the juvenile court's order terminating each parent's parental rights.

**AFFIRMED ON BOTH APPEALS.**