# In the Iowa Supreme Court

No. 23–0826

Submitted March 26, 2025—Filed April 18, 2025

**Katie Venechuk** n/k/a **Katie Vandewalker,**

Appellant,

vs.

**Gary A. Landherr,**

Appellee.

Appeal from the Iowa District Court for Worth County, Blake H. Norman, judge.

A mother seeks further review of a court of appeals decision denying her request to modify a child custody order as to the school district the child attends.

**Decision of Court of Appeals Vacated; District Court Order Affirmed.**

Mansfield, J., delivered the opinion of the court, in which all justices joined except McDonald, J., who joined as to part IV(A) and filed an opinion concurring in part and dissenting in part.

Andrew B. Howie (argued) of Shindler, Anderson, Goplerud, & Weese, P.C., West Des Moines, for appellant.

Judith O'Donohoe (argued) of Elwood, O'Donohoe, Braun, White, LLP, Charles, City, for appellee.

**Mansfield, Justice.**

### I. Introduction.

A mother changed her residence and wanted her eight-year-old daughter, who was the subject of an existing custody order, to attend school there. The father objected. He argued that it would be disruptive for the daughter to change schools and that it would limit his time with her. When the parents were unable to agree despite mediation, the mother petitioned to modify the custody decree.

The district court declined to grant the mother's requested modification. Reaching the merits, it determined that changing school districts was not in the daughter's best interests. The mother appealed. While the appeal was pending, we decided *In re Marriage of Frazier*, 1 N.W.3d 775 (Iowa 2024). Based on their interpretation of *Frazier*, a divided panel of the court of appeals concluded that the district court lacked authority to hear the mother's petition. The problem, in the view of the court of appeals majority, was that the mother was not seeking to alter the parents' status as joint legal custodians of the daughter. Thus, the court of appeals affirmed the district court's ruling without considering the merits of the mother's petition.

On further review, we disagree with the court of appeals majority's overly narrow reading of *Frazier*. Generally speaking, a court that entered a custody decree has authority to modify it when requested to do so. The requested modification does not have to relate to who has legal custody but can relate to another aspect of the decree.

As recognized by the court of appeals dissent, authority to grant relief is lacking when the court is being asked *not to modify or enforce its decree* but simply to answer a "free floating" question about the raising of a child. That was the situation in *Frazier*, but it isn't the situation here. The decree here specified

the daughter's school district, and the mother sought to modify that district based on a change of circumstances. So the district court had the authority to rule on the mother's petition.

Nevertheless, on de novo review, we agree with the district court's determination that changing school districts was not in the daughter's best interests.[1] Therefore, although we vacate the court of appeals decision, we affirm the district court's order denying the modification petition.

**II. Background Facts and Procedural History.**

**A. The Original Custody Decree.** M.L., born in 2013, is the daughter of Katie Vandewalker and Gary Landherr. Katie and Gary were never married, but they raised M.L. together until their separation in 2017.

In 2018, the Worth County District Court issued a custody decree based on a stipulation reached by the parents. Katie was granted primary physical care of M.L., while Gary had visitation rights every Tuesday, every other weekend, and during some holiday periods. Both parents were given joint legal custody. The decree also covered M.L.'s schooling. It stated,

> The parties presently contemplate the child attending the St. Ansgar school district. In the event either parent desires the child to attend a school district other than St. Ansgar, and if the other party does not agree to such change in district, the party desiring to change the school district shall obtain prior Court approval.

M.L. began attending school at St. Ansgar. In early 2019, Katie moved to Riceville to live with her significant other, Ryan Vandewalker, whom she later married. Riceville is about twenty miles east of St. Ansgar.

**B. The 2020 Petition for Modification.** Gary, desiring greater visitation with M.L., petitioned later that year to modify the custody decree. Katie answered

---

[1]As discussed below, we bypass the question of whether the mother proved the required change of circumstances.

and sought modification of certain other aspects of the decree. In 2020, the district court granted Gary's modification request in part and extended his biweekly weekend visitation to begin on Thursday evening rather than Friday evening.

This modification did not affect the designation of the St. Ansgar school district. M.L. continued attending school at St. Ansgar despite living primarily with her mother in Riceville.

**C. The 2023 Petition for Modification.** In 2021, Katie decided to enroll her eldest daughter (not M.L.) in the Riceville school district. Katie's eldest has Down syndrome, and Katie felt that the Riceville school district would do a better job of accommodating her special needs.

Katie spoke with Gary about transferring M.L. from the St. Ansgar district to the Riceville district. Gary expressed his opposition, and the two submitted their dispute to the parent coordinator identified in the custody decree. According to the mediator, the parties met and had "a good discussion" about the situation but were unable to agree. Thus, in the summer of 2022, Katie petitioned the district court to modify the custody decree to allow M.L. to attend Riceville.

The case proceeded to a hearing in April 2023. Katie testified that a transfer to the Riceville school district would enable M.L. to attend the same school as her older half-sister. Also, in the future, Katie anticipated sending her third child—a two-year-old daughter with Ryan—to the Riceville schools.

Katie also testified that changing schools would significantly reduce M.L.'s travel time. In March 2023, Katie and Ryan had moved to a different home in Riceville that was about five miles to the east of the previous one. This meant that the trip to school in Riceville was now only a minute or two by car.

Meanwhile, the ride to school in St. Ansgar was about twenty-five minutes by car and significantly longer by school bus. It would take Katie ten to fifteen minutes to get M.L. to the bus stop, and then the bus ride itself took almost an hour. In addition, Katie expressed concern about the quality of the education M.L. received at St. Ansgar.

Gary explained why he disagreed with the proposed change. Gary testified that M.L. "already had her relationships established with her friends and her teachers in the St. Ansgar school district." He noted that M.L. had been attending St. Ansgar while living in Riceville for years and that it had not been an issue. Gary, who is self-employed selling electronics mostly online and does some roofing work in the summer, testified that he had a flexible work schedule. He volunteered that he was willing to drive M.L. to and from school when needed to avoid the bus ride. Finally, citing some official statistics, he argued that St. Ansgar was the superior school.

The district court denied the modification on the ground that it was not in M.L.'s best interests:

> The Court finds that it is in [M.L.'s] best interest to remain in the St. Ansgar school district. Most of the evidence presented by both parties ends up being countered by another fact. The importance of [M.L.] to go to school with her half siblings is countered by the fact that she will not be in the same school or classes with them, just the same district. The distance factor is countered by Gary's offer to provide transportation to school when Katie is unable to do so. Katie has [M.L.] for the majority of the school days. Convenience for Katie is undeniable and makes her morning routine much simpler but [M.L.'s] interest is the concern of the Court.

> Ultimately, the Court finds it is in [M.L.'s] best interest to remain due to Gary's support and participation in the education of [M.L.]. As stated by Katie, she has a very demanding home life; having 3 children which includes a child with developmental needs and is not as able to give as much one-on-one attention. Gary's only child is [M.L.] and that allows him the free time to be more active in

[M.L.'s] life and education. Gary's employment is flexible as well. Gary attends lunches with [M.L.] and has been seen at school with her. Gary is able to be present for sports, community and other activities such as dance.

The district court added,

Stability is important for children of divorced parents and, unless a need for change is present, [M.L.] should remain in a place that she is thriving emotionally and doing well academically. Many children travel for school, either on a bus or with a parent, and the amount of travel to St. Ansgar is not excessive.

Finally, the court added a proviso regarding transportation:

Gary will provide transportation for [M.L.] as requested by Katie. If Katie wishes to have [M.L.] ride the bus, Gary shall have the right to provide transportation for [M.L.] in lieu of the bus. A request for Gary to provide transportation as outlined above shall be done promptly but not less than 24 hours unless an emergency occurs.

If Gary is unable to provide long term transportation for [M.L.], this matter may be revisited for a legal determination as to the appropriate school.

**D. The Rule 1.904 Motion.** Katie filed a motion requesting that the court amend or enlarge its ruling under Iowa Rule of Civil Procedure 1.904. She asked the district court to strike the provision from the order giving Gary the right to transport M.L. in lieu of the bus whenever Katie wished to have M.L. take the bus. Katie noted that the parties' relationship had deteriorated such that they do not talk to each other directly. She argued that this provision could lead to additional friction. Gary responded to the rule 1.904 motion by proposing a fixed schedule. Under that schedule he would take M.L. to school every Tuesday, Wednesday, and Thursday, and Katie could put M.L. on the bus on Mondays and Fridays.

The court ruled that it would permit—but not mandate—Gary's proposal for a fixed schedule. It explained,

> Although the parties have trouble communicating, they both share joint legal status and shall cooperate with each other. It is not in [M.L.'s] best interest to be required to ride the bus when her father has stated he is willing to provide transportation. This was cited as a basis by Katie to change schools and father's willingness to remove this obstacle was a reason that [M.L.] shall remain at St. Ansgar. However, the Court does recognize the need to avoid conflict and does find being required to ride the bus up to twice a week to avoid any conflict to be appropriate.

> Both parties shall make a good faith effort to make this arra[nge]ment work for [M.L.'s] benefit. The parties are free to make a schedule for Gary to provide transportation as he requested in his resistance but will not be mandated by the Court.

**E. The Court of Appeals Decision.** Katie appealed the district court's rulings, and we transferred the appeal to the court of appeals.

While the appeal was pending, our court decided *Frazier*. The court of appeals interpreted *Frazier* as requiring every modification request "within the scope of legal custody" to seek "sole legal custody." Because "Katie never sought modification to receive sole legal custody," her petition was "doomed." On that basis, the court of appeals affirmed the district court's decision to deny the modification.

One member of the court of appeals dissented. The dissent found *Frazier* distinguishable because *Frazier* involved a self-styled "application for vaccination determination" as to whether the minor children should receive a COVID-19 vaccination—a matter *not* covered by the original custody decree. By contrast, Katie and Gary's custody decree contained a provision specifying which school district M.L. would attend.

Reasoning that *Frazier* was no bar to Katie's claim, the dissent then urged that the district court's decision on the merits should be reversed. In its view, the district court erred in failing to consider the change of circumstances from the time of the original decree. At the time the custody decree was originally

entered, Katie had been living with family some thirty miles from Riceville, where Katie now lived. The dissent contended that a move of that distance was a material change of circumstances. The dissent also maintained that M.L.'s interests would be served best by attending a school closer to her home, allowing her to save on travel time and "develop deeper relationships with the other kids in the neighborhood."

Katie applied for further review, which we granted.

### III. Standard of Review.

Petitions to modify custody orders lie in equity and are reviewed de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "While we are not bound by the fact-findings of the district court, we give them weight, especially as to credibility determinations." *In re Marriage of Kisting*, 6 N.W.3d 326, 332 (Iowa Ct. App. 2024) (quoting *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020)).

### IV. Analysis.

**A. The Impact of *In re Marriage of Frazier*.** The court of appeals held that *Frazier* foreclosed consideration of Katie's petition because she did not request sole legal custody. Both parties contend that *Frazier* is not relevant here. We agree with the parties and disagree with the court of appeals.

*Frazier* involved a dispute between two divorced parents who shared joint legal custody of two minor children over whether those children should be vaccinated against COVID-19. 1 N.W.3d at 778. Following an unsuccessful mediation, the mother "filed an application for vaccination determination, asking the district court to authorize the children's COVID-19 vaccination." *Id.* The district court denied the application. *Id.* It noted that the dissolution decree gave both parents joint custody over the children. *Id.* It reasoned that with no

modification application having been filed, it was without jurisdiction to resolve the dispute. *Id.*

Initially, a panel of the court of appeals reversed the district court, with one judge dissenting. *Id.* We took the case for further review, vacated the court of appeals decision, and affirmed the district court's ruling. *Id.* We noted that the mother's filing was not a modification petition either in its plain language or in its purpose. *Id.* at 779. The mother wasn't "actually seeking to modify prior orders." *Id.* We agreed with the district court that outside of a modification request, the court did not have the authority to act as a "tiebreaker" in decisions reserved for the joint custodians to resolve themselves. *Id.* at 778. As we put it, "Because Mom did not request a modification of the custody agreement pursuant to statute, the district court does not have the authority to resolve the parents' dispute." *Id.*

We noted that even if the mother had filed a petition for modification rather than a determination request, her motion still would have failed. *Id.* at 782. That is because authority to modify divorce decrees requires either a "change of circumstances" or that the "decree unequivocally provides for later trial court review without the necessity of showing a change of circumstances." *Id.* at 781 (quoting *In re Marriage of Schlenker*, 300 N.W.2d 164, 165–66 (Iowa 1981)). We found that "the language in the parents' decree did not explicitly reserve the district court's jurisdiction." *Id.* Nor did the mother argue that there had been a substantial or material change in circumstances that would justify a modification. *Id.* at 781–82.

In *Frazier*, we also discussed whether a district court could resolve a dispute over a postdecree change of school for a minor child. *See id.* at 782–84. We said it could do so when a party filed a petition to change the school. *Id.* at

784. We approved of several unpublished opinions of the court of appeals in which this had occurred. *Id.* 783–84. None of those cases involved a request for sole legal custody. *Id.* We said that those cases were "properly before the district court" and that this was "the proper course of action . . . to invoke the district court's authority." *Id.* at 783, 784.

*Frazier* involved a different situation. The decree had no provision concerning vaccination. *Id.* at 778. The mother, who had primary physical care of the children, wanted them to receive the COVID-19 vaccine; the father did not. *Id.* The mother filed a motion to obtain judicial authorization to proceed with vaccination. *Id.* At the same time, the mother disclaimed any interest in modifying the parties' joint legal custody of the children. *Id.* at 782. We held that in the absence of a motion to modify some aspect of the decree—and in *Frazier* there was nothing but the joint legal custody provision to modify—the mother's motion could not succeed. *Id.* at 788.

Here, by contrast, the original decree contained a provision stating which school M.L. would attend. That was the provision that Katie sought to modify, and she could do so without also seeking to obtain sole legal custody.

A judicial decree, such as the child custody and support decree at issue here, is a *judgment.* This means that it is subject to the rules governing judgments. We discussed those rules in some detail in *Spiker v. Spiker,* 708 N.W.2d 347, 354–56 (Iowa 2006). Notwithstanding principles of res judicata, a judgment that grants continuing relief—like a child custody and support decree—may be *modified* based on changed circumstances. *Id.* (discussing Restatement (Second) of Judgments § 13, cmt. *c,* at 134 (Am. L. Inst. 1982)).

To summarize, *Frazier* wasn't a modification case. The mother in *Frazier* did not file a petition for modification, and she didn't want to alter the decree.

*Frazier,* 1 N.W.3d at 779. She wanted the courts to referee a medical decision. *Id.* By contrast, this is a modification case. Katie and Gary's custody decree stated that M.L. would attend St. Ansgar; Katie wanted to change that. In fact, the decree specifically contemplated court involvement such as occurred here: it required, and thus also foresaw, the possibility of "court approval" to alter the school district.

**B. Was Modification Warranted?** Having found that the district court had the authority to modify the decree with respect to M.L.'s school district, we now turn to whether it should have done so.

In the district court, the parties debated at length whether Katie had to show a material and substantial change in circumstances as required for a change in custody, *see In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983), or whether the lower standard of proof applicable to modifications in visitation and parenting schedules applied. *See In re Marriage of Brown,* 778 N.W.2d 47, 51–52 (Iowa Ct. App. 2009); *see also In re Marriage of Spears,* 529 N.W.2d 299, 302 (Iowa Ct. App. 1994) ("The burden to change physical care is heavier than the burden to change the place of school attendance or to change the visitation schedule.").

Another point of disagreement was the frame of reference to be used in determining whether there had been a change in circumstances warranting modification. Katie's baseline was 2018, the date of the original decree. Gary's baseline was 2020, the date when the decree was modified for the first time. This difference matters because Katie was already living in Riceville in 2020 but did not seek to change M.L.'s school district then.

The district court bypassed disputes relating to whether the required change of circumstances had been shown. Instead, it resolved Katie's

modification petition solely on the basis of the best interests of the child. We elect to do the same here.

The district court made a careful and thorough evaluation of M.L.'s best interests. At the outset, we agree with the district court's observation that "[m]ost of the evidence presented by both parties ends up being countered by another fact."

For example, both Katie and Gary praised the school district that each of them preferred and criticized the other parent's preferred district. Yet the exhibits that were admitted into evidence indicate that both districts have been performing well and are comfortably meeting state educational standards. Katie expressed concern about M.L.'s travel time to school, but Gary offered to drive M.L. when needed and the modification order holds him to that promise. Katie pointed out that a change of schools would allow M.L. to attend the same school district as her older sister, her younger sister (when she starts going to school), and her immediate neighbors. Meanwhile, Gary responded that Katie would not be in the same classes as her older sister or her younger sister. She is four years younger than her older sister and seven years older than her younger sister.

Gary also noted that most of M.L.'s friends attend school in St. Ansgar. M.L. has participated in dance classes in St. Ansgar since she was three. Gary takes her to lessons every Tuesday night and every other Thursday night when she is with him for visitation. Gary stated that M.L. has befriended many of the other dancers and enjoys going to the same school as them. Gary also reported that M.L. is friends with school classmates whom she sees at church and plays with in the neighborhood.

The district court found that Gary's more flexible schedule favored M.L. attending the St. Ansgar schools because Gary was able to dedicate more time

to M.L.'s school-related and extracurricular activities than Katie. The court further found that M.L. was happy at the St. Ansgar school; she was "thriving emotionally and doing well academically." And it observed that stability is important for a nine-year-old school child and that many children spend comparable amounts of time traveling to school.

We find the district court's analysis persuasive. Thus, we too hold that the best interests of M.L. do not warrant a modification of the decree as to M.L.'s school district. Our affirmance of the district court is driven in large part by the respect we give to the district court's findings. On intangible matters, such as how best to assure stability in M.L.'s life and whether one can trust Gary to deliver on his promised follow-through, the district court has a closer perspective than we do. "The trial court has the advantage of listening to and observing the parties and witnesses and is in a better position to weigh the credibility of witnesses than the appellate court, which is limited to a written record." *In re Marriage of Heiar*, 954 N.W.2d 464, 469 (Iowa Ct. App. 2020).

**V. Conclusion.**

For the foregoing reasons, we affirm the judgment of the district court and vacate the decision of the court of appeals.

**Decision of Court of Appeals Vacated; District Court Order Affirmed.**

All justices concur except McDonald, J., who concurs as to part IV(A) and files an opinion concurring in part and dissenting in part.

#23–0826, *Vandewalker v. Landherr*

**McDonald, Justice (concurring in part and dissenting in part).**

I agree with the court that the district court had the authority to resolve the parties' dispute regarding where their child would attend school both because this was a modification action and because the district court had the inherent authority to resolve the impasse between these joint legal custodians. *See In re Marriage of Frazier,* 1 N.W.3d 775, 789 (Iowa 2024) (McDonald, J., dissenting).

I disagree with the court that continued enrollment of the child in the St. Ansgar school district is in the best interests of the child. The default rule is that where, as here, one parent has physical care of the child, then the place of the child's residence determines which school the child will attend. *See Marriage of Hoffman,* 867 N.W.2d 26, 35–36 (Iowa 2015). Here, that means Riceville. Having the child attend school in Riceville is in the best interests of the child. The child lives one and a half minutes from the school in Riceville. Now, at the court's direction, the child will be forced to spend at least fifty minutes or two hours and thirty minutes per day commuting to and from school, depending on whether she is driven to school or has to ride the bus. This substantially reduces the time she has to do all the other things important to childhood development—studying, socializing with her siblings and friends, and engaging in extracurricular activities. I am not sure why substantially more windshield time and substantially less work and play time is in the best interests of the child. For these reasons, and the reasons expressed by the dissenting judge in the court of appeals, I respectfully dissent.