# IN THE COURT OF APPEALS OF IOWA

————————

No. 25-0711
Filed January 28, 2026

————————

**Louis Ngor,**
Petitioner–Appellant,

v.

**Nyabet Kak,**
Respondent–Appellee.

————————

Appeal from the Iowa District Court for Polk County,
The Honorable David Nelmark, Judge.

————————

**AFFIRMED**

————————

Sarah M. Yaske of Wasker, Dorr, Wimmer & Marcouiller, P.C., West Des
Moines, attorney for appellant.

Jason S. Rieper of Rieper Law, P.C., Des Moines, attorney for appellee.

————————

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

Louis Ngor and Nyabet Kak are the parents of two children: T.L.N., born in 2010, and N.L.N., born in 2015. Ngor appeals from the district court's decree establishing custody, visitation, and support over the children. He contends the district court erred in not placing the children in the parties' joint physical care and in ordering retroactive child support, and abused its discretion in awarding attorney fees to Kak. Finding no error or abuse of discretion, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

Ngor and Kak entered a romantic relationship and began living with each other in 2009. The two lived together with their children until December 2020. Following their separation, Ngor did not provide financial support for the children until a child support order was entered in 2023 setting Ngor's monthly child support at $1,394 following Kak's filing of an Iowa Code chapter 252C action.

In March 2024, Ngor petitioned for custody and support, requesting the district court grant the parties joint legal custody and joint physical care of the children, as well as a modification of Ngor's child support obligation to reflect the requested joint physical care arrangement. Kak answered that petition by counterclaiming for back child support beginning from the time the parties separated. There was no temporary-matters order entered during the pendency of this case. Instead, the parties have operated under the same care arrangement they have used since the 2020 separation. Under that arrangement, Ngor cares for the children beginning on Friday evenings through Sunday mornings. Kak cares for the children all other days.

In April 2025, the district court entered an order giving the parties joint legal custody but granting physical care to Kak and requiring Ngor to pay back child support.

The district court ultimately gave the parties joint legal custody due to "both parents [being] suitable custodians" and the record lacking "evidence that they are *incapable* of communicating if and when it would be necessary on an educational, medical, or legal issue involving the children." On physical care, the district court found that since Ngor has only cared for the children on weekends, "[a] shift to 50/50 shared physical care would be a significant change to the arrangement the children have been accustomed to for years." It further noted that "the parties' communication is infrequent and poor," citing T.L.N.'s involvement in a car accident that Ngor did not learn about directly from Kak, as well as instances where Ngor has taken care of T.L.N. for an entire day before informing Kak the child was in his care.

> Although the Court found the parties' communication was not sufficient to deny [Ngor's] rights as a joint legal custodian, the Court finds it would be a barrier to a shared care arrangement that requires regular communication about the day-to-day aspects of parenting. Even if it was feasible, it would not be in the children's best interests as it would be a significant departure from the arrangement they are used to.
>
> By his own testimony, [Ngor] only saw kids "on weekends." [Kak] testified that it was never more than two nights in a row. [Ngor]'s interrogatory answers suggest he saw the children only on Fridays. Although he testified that the girls stayed over until church, the interrogatory answers indicated [Kak] did not allow the children to go to church. Further, [Ngor] has not been involved in the day-to-day aspects of parenting when he has not had the children. For example, since the parties' separation he has rarely, if ever, attended medical appointments or parent-teacher conferences for the children.
>
> . . . .

3

. . . [T]he children have spent significantly more time in the care of [Kak] than they have in the care of [Ngor]. [Kak] has been serving as the de facto primary care parent. The Court sees no basis to disturbing that arrangement and believes it is in the best interests of the children.

On retroactive child support, the district court noted that Ngor had not provided any financial support for the children for a period of thirty-one months. During that thirty-one-month period, Ngor was earning around $100,000 annually while Kak was earning between $30,000 and $45,000 annually. It noted that, after the most recent child support order, Ngor did take a buyout from his employer, Bridgestone, in the amount of $35,000 in anticipation of a potential layoff. But Ngor still owns a $350,000 home, which the district court believed indicates a lack of major financial hardship incurred by the child support order or subsequent change in employment.

So the district court decreased Ngor's current child support obligation but found that $1,394 of monthly child support over the thirty-one months following the parties' separation amounted to $43,214,[1] which it rounded down to $40,000 as Ngor's retroactive support obligation. The court arrived at this figure due in part to the "nominal support" Ngor provided such as "occasional clothes shopping or paying for [the children] to order in dinner." The court further found that Ngor's recent $35,000 buyout payment from Bridgestone supported a finding that Ngor possesses the financial means to pay his retroactive obligation.

---

[1] The court also remarked that, had this monthly support obligation "been calculated at the time of the parties' separation, the amount would likely have been higher" given that Kak's income was higher at the time child support was assessed in 2023 in contrast to at the time the parties separated in 2020.

Ngor now appeals the district court's decree.

## STANDARD OF REVIEW

We review child custody and support orders de novo. Iowa R. App. P. 6.907; *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). We give weight to the district court's factual findings, especially when considering witness credibility, but are not bound by them. *Sullins*, 715 N.W.2d at 247. The best interests of the children is our overriding consideration. Iowa R. App. P. 6.904(3)(n).

We review district court awards of attorney fees for an abuse of discretion. *Sullins*, 715 N.W.2d at 247. "The court has considerable discretion in awarding attorney fees." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 488 (Iowa 2012). "We reverse the district court's ruling only when it rests on grounds that are clearly unreasonable or untenable." *In re Marriage of Erpelding*, 917 N.W.2d 235, 238 (Iowa 2018) (citation omitted).

## DISCUSSION

### I. Physical Care Determination

Ngor first appeals the district court's decision to grant Kak physical care of the children. The district court makes its physical care determination pursuant to the requirements of Iowa Code section 598.41(5) (2024) and will consider the factors enumerated by our supreme court in *In re Marriage of Hansen*. 733 N.W.2d 683, 695 (Iowa 2007). Those factors include approximation, the parents' ability to communicate and demonstrate mutual respect, the degree of parental conflict, and the extent to which the parents agree about general child rearing practices. *Id.* at 697–99. Although approximation alone cannot define the physical care determination, "where one [parent] has been the primary caregiver, the likelihood that joint physical

care may be disruptive on the emotional development of the children increases." *Id.* at 698.

> In considering whether to award joint physical care where there are two suitable parents, stability and continuity of caregiving have traditionally been primary factors. Stability and continuity factors tend to favor a [parent] who, prior to divorce,[2] was primarily responsible for physical care.

> We continue to believe that stability and continuity of caregiving are important factors that must be considered in custody and care decisions. As noted by a leading scholar, "past caretaking patterns likely are a fairly reliable proxy of the intangible qualities such as parental abilities and emotional bonds that are so difficult for courts to ascertain." While no post-divorce physical care arrangement will be identical to predissolution experience, preservation of the greatest amount of stability possible is a desirable goal. In contrast, imposing a new physical care arrangement on children that significantly contrasts from their past experience can be unsettling, cause serious emotional harm, and thus not be in the child's best interest.

*Id.* at 696–97 (internal citations omitted).

Ngor argues that the district court's decision to grant Kak physical care of the children "directly contradicts" its finding of suitability, referencing the district court's findings that "[b]oth parents are suitable custodians for the children" and "have the ability to provide adequate care for the children." But we do not find the district court's findings and decree contradictory.

Although suitability is a relevant factor to consider, the decision to grant one parent physical care is not dependent on a finding that the other

---

[2] In making a physical care determination, we apply the same factors to parents who were never married as we would to married parents. *See Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988); *see also* Iowa Code § 600B.40.

parent is an unsuitable caretaker. *See id.* at 696 ("Although Iowa Code section 598.41(3) does not directly apply to physical care decisions, . . . the factors listed here as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child."). Indeed, while the court considered parental suitability as a relevant factor here, it found that stability and continuity of caretaking outweighed those relevant factors, noting that "the children have spent significantly more time in the care of [Kak] than they have in the care of [Ngor]. [Kak] has been serving as the de facto primary care parent." It is undisputed that Kak has been the primary caretaker since the parties' separation and the district court was not wrong to give this factor weight.

Ngor further contends that his living arrangement, which is a ten-minute drive from the children's school and allows for each child to have their own bedroom,[3] would minimize disruption. He also argues that he has a better history of communicating with Kak, has been denied parenting time in the past, and "is the sole parent who consistently transports the children to extracurricular activities." But the district court expressly found both parties to be poor communicators and that Ngor "has rarely, if ever, attended medical appointments or parent-teacher conferences for the children." We do not find Ngor's extracurricular-activities argument to be especially compelling in light of the district court's factual findings about his attendance at the children's medical and educational events. We affirm the district court's physical-care determination.

---

[3] The children share a bedroom in Kak's home.

## II.    Retroactive Child Support

Ngor argues the district court incorrectly assessed back child support for the thirty-one months between the month of the parties' separation and the month that Ngor was ordered to pay child support starting in 2023. He argues, as he did below, that back child support is prevented by res judicata,[4] or alternatively, that it is unreasonable.

He argues that the prior court had "original jurisdiction to determine all child support matters, including claims for retroactive child support." The district court agreed but found "nothing in the record to suggest that it considered [ordering back child support] or that any party even requested it." Ngor fails to explain why the district court was wrong in finding that back child support was never litigated or considered in the prior case.

And the order was not unreasonable. The district court found, and we agree, that Ngor occasionally purchasing dinner or school supplies for the children was insufficient support to outweigh the over $40,000 in child support he would have otherwise paid during that time. Ngor additionally provides no evidence that Kak "unreasonably delayed asserting her right to collect back child support from him" and that "he was prejudiced by the delay." *See Markey v. Carney*, 705 N.W.2d 13, 22 (Iowa 2005). We affirm the order for back child support.

---

[4] Although "[t]he doctrine of res judicata embraces the concepts of claim preclusion and issue preclusion," Ngor does not specify which doctrine he is relying on. *Spiker v. Spiker*, 708 N.W.2d 347, 353 (Iowa 2006) (citation omitted). The district court interpreted his argument to invoke the doctrine of issue preclusion, which "requires the issue to have been actually litigated." *Id.* We do the same.

## III. Attorney Fees

Ngor argues the district court's award of trial attorney fees was an abuse of discretion because he does not have superior ability to pay. But this is not the only factor the court will consider when assessing attorney fees, see *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994), and the district court here agreed that the parties "earn roughly the same income . . . but the receipt of the [$35,000] lump sum payment clearly places [Ngor] in a better position to cover attorneys' fees in this matter." As the court concluded, "[t]o allow him to keep this full payment while not imputing the former Bridgestone income into the child support calculations would create an injustice." The district court was not unreasonable in so concluding and did not abuse its discretion in ordering Ngor to pay attorney fees. We accordingly affirm the district court decree in whole.

**AFFIRMED**.